**FILED**

JUL 3 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MR. DAVID. VELASQUEZ (D-75915)
PETITIONER,

PETITION FOR WRIT OF
HABEAS CORPUS

Vs.

MR. ROBERT A HORREL
RESPONDENT,

CV-08-3298 PJH (PR)

## PETITIONERS WRIT OF HABEAS CORPUS

PETITION FROM THE JUDGMENT OF ADMINISTRATIVE
APPEAL REVIEWER(S) OF THE CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION.

# TOPICAL INDEX

MC-275 WRIT FOR HABEAS CORPUS FORM . . . . . . . . . . i - ix.

VERIFICATION . . . . . . . . . . . . . . X.

INTRODUCTION . . . . . . . . . . . . . . 1-2.

PARTIES . . . . . . . . . . . . . . . 3.

STATEMENT OF FACTS . . . . . . . . . . . 4-6.

CONTENTIONS . . . . . . . . . . . . . 7-8.

GROUNDS . . . . . . . . . . . . . . 9-20.

MEMORANDUM of PoINts And AuthoRITY . . . . . . . . 21-26.

EXHIBIT A ; PetitiONERS 114-D Lock uP ORdER

Exhibit B ; PETITIONERS 128-B GANG ActiVitY (SYMbols)

Exhibit C ; CoNfidENtiAl InfoR MATioN (AdddREss)

EXHIBIT D ; CoN fidENtiAl InfoRMATioN ( WRittEN MAteRiAl)

Exhibit E ; GANG InfoRMATioN ChRoNo

Exhibit F ; VAlIDATIoN HEARING

EXHIBIT G ; VAlIDATioN STATEMENT

EXHIBIT H ; 128-B-2

EXHIBIT I ; 114-D And 128-G (SHU PlAcEMENt HEARiNG)

ExhiBit J ; INMAtE APPEAl

ExhiBit J.a. ; SECoNd lEVEl RESPoNCE

ExhiBit J.b ; ThiRd lEVEl RESPoNCE



EXHiBiT "K" iN RE :

(#5 - CulTuRAL DRAWiNgs)

( EXHIBIT K: . . . . . . . . . . . . . . )

Name _MR. DAVID VELASQUEZ_

Address _PELICAN BAY STATE PRISON 221 SHU._

_Post Office 7500_

_CRESCENT CITY, CA, 95531-7500_

CDC or ID Number _D-75915_

MC-275

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

_MR. DAVID VELASQUEZ (D-75915)_
Petitioner

vs.

_ROBERT A. HORREL (WARDEN)_
Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 (Rev. July 1, 2005)

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 at seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

This petition concerns:

- [ ] A conviction
- [ ] A sentence
- [ ] Jail or prison conditions
- [x] Other (specify): PRISON GANG VALIdATION ANd/OR SEGREGATION

- [ ] Parole
- [ ] Credits
- [ ] Prison discipline

1. Your name: MR. DAVId VELASQUEZ

2. Where are you incarcerated? PELICAN BAY STATE PRISON

3. Why are you in custody?  [x] Criminal Conviction  [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

PETITIONER doES Not chAllENGE thE bASIS of hIS CRIMINAl CONVICTION ANd SENTENCE IN thESE PROCEEDINGS.

b. Penal or other code sections: 

c. Name and location of sentencing or committing court: 

d. Case number: 

e. Date convicted or committed: 

f. Date sentenced: 

g. Length of sentence: 

h. When do you expect to be released? 

i. Were you represented by counsel in the trial court?  [ ] Yes.  [ ] No. If yes, state the attorney's name and address:

4. What was the LAST plea you entered? *(check one)*

- [ ] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: 

5. If you pleaded not guilty, what kind of trial did you have?

- [ ] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

ii

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

PRISON GANG VALIDATION AND SEGREGATED HOUSING UNIT term VIOLATES PETITIONERS fourteenth Amendment Right UNDER the due Process clause; SIXth AMENDMENT RIGHT TO A FAIR (TRIAL/HEARING) AND EIGth AMENDMENT RIGHT to be exempt from CRUEL AND UNUSUAL PUNISHMENT.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who did exactly what* to violate your rights at what time *(when)* or place *(where).* *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

SEE, SUPPORTING facts Attached hereto.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

SEE, MEMORANDUM of Points AND Authorities Attached hereto.

MC-275 [Rev. July 1, 2005]                    PETITION FOR WRIT OF HABEAS CORPUS                    Page three of six

iii

6. GROUNDS FOR RELIEF

**Ground 1.** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

PRISON OFFICIALS HAVE VALIDATED PETITIONER AS AN ACTIVE PRISON GANG MEMBER/ASSOCIATE AND RETAINED HIM IN THE SECURITY HOUSING UNIT BASED ON FALSE, UNRELIABLE AND INSUFFICIENT INFORMATION WHICH CONSTITUTES A VIOLATION OF HIS 14th AMENDMENT RIGHTS TO dUE PROCESS AND 6th TO A FAIR TRIAL.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

1. SEE, SUPPORTING FACTS ATTACHED HERETO.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

SEE, MEMORANDUM OF POINTS AND AUTHORITIES ATTACHED HERETO.



7. **Ground 2 or Ground** __3__ *(if applicable):*

PRISON OFFICIALS HAVE A POLICY AND PRACTICE OF PLACING AND RETAINING
PRISONERS IN THE SECURITY HOUSING UNIT BASED ON MERE ALLEGATIONS OF GANG
AFFILIATION, RATHER THAN MISCONDUCT, WHICH THEREBY CREATES A LIBERTY
ISSUE IN VIOLATION OF PETITIONERS 14th AND 8th AMENDMENT RIGHTS

a. Supporting facts:

SEE SUPPORTING FACTS ATTACHED HERETO.

b. Supporting cases, rules, or other authority:

SEE, MEMORANDUM OF POINTS AND AUTHORITIES ATTACHED HERETO.

**PETITION FOR WRIT OF HABEAS CORPUS**

7. Ground 2 or Ground __4__ *(if applicable):*

PRISON OFFICIALS ENFORCE VAGUE AND OVERBROAD REGULATIONS that INFRINGE UPON PETITIONER'S FREE AND INNOCENT SPEECH AND CONDUCT WHICH VIOLATES HIS FIRST (1st) AND FOURTEENTH AMENDMENT RIGHTS UNDER the UNITED STATES CONSTITUTION.

a. Supporting facts:

SEE, SUPPORTING FACTS ATTACHED HERETO.

b. Supporting cases, rules, or other authority:

SEE, MEMORANDUM OF POINTS AND AUTHORITIES ATTACHED HERETO.

7. Ground 2 or Ground __5__ *(if applicable):*

PRISON OFFICIALS ARE ENFORCING PRISON GANG REGULATIONS THAT HAVE NOT BEEN PROMULGATED PURSUANT TO THE ADMINISTRATIVE PROCEDURES ACT (APA) WHICH ULTIMATELY CONSTITUTED A VIOLATION OF PETITIONERS DUE PROCESS RIGHTS.

a. Supporting facts:

SEE, SUPPORTING FACTS ATTACHED HERETO.

b. Supporting cases, rules, or other authority:

SEE, MEMORANDUM OF POINTS AND AUTHORITIES ATTACHED HERETO.

vii

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☐ No.  If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

_____

b. Result _____    c. Date of decision: _____

d. Case number or citation of opinion, if known: _____

e. Issues raised:  (1) _____

(2) _____

(3) _____

f. Were you represented by counsel on appeal?  ☐ Yes.  ☐ No. If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court?  ☐ Yes  ☐ No.  If yes, give the following information:

a. Result _____    b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised:  (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

_____

_____

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App 3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

PETITIONER EXHAUSTED ADMINISTRATIVE REMEDIES by SUBMITTING

AN INMATE APPEAL FORM (CDC 602) to the highest level of ADMINISTRATIVE

REVIEW AVAILABLE. TAB CASE No. 0608190 ; Local Log No.: CAL 06-02444

(See Ex.    (CDC 602 form.))

_____

_____

_____

_____

b. Did you seek the highest level of administrative review available?  ☑ Yes.  ☐ No.

Attach documents that show you have exhausted your administrative remedies.



viii

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _This Is Petitioners Initial haBEAS CORpus on this ISsuE._

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

    b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

    c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

    _THERE ARE No dELAy's. All tIME contRAINts hAVE bEEN MET._

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

    _This CouRt hAs JuRIsdIctIoN oVER this PetItIoN._

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _7-28-08_

(SIGNATURE OF PETITIONER)

IX.

PROOF OF SERVICE BY MAIL

(C.C.P. Section 1010 # 2105.5, 20 U.S.C. 1746)

I, DAVID, VELASQUEZ _____, AM A RESIDENT OF PELICAN BAY
PRISON, IN THE COUNTY OF DEL NORTE, STATE OF CALIFORNIA. I AM
OVER EIGHTEEN (18) YEARS OF AGE AND AM A PARTY TO THE
BELOW NAMED ACTION.

MY ADDRESS IS: P.O. BOX, 7500 CRESCENT CITY, CA. 95531-7500

ON THE _____ DAY OF JULY, IN THE YEAR OF 2008, I SERVED
THE FOLLOWING DOCUMENTS: (SET FORTH THE EXACT TITLE OF
OF DOCUMENTS SERVED)

THREE /3 PETITION'S FOR WRIT OF HABEAS CORPUS/CV-08-3298-
PJH(PR)

ONE/1 I.F.P. AND SUPPORTING DOCUMENTS

ON THE PARTY(S) LISTED BELOW BY PLACING A TRUE COPY(S) OF SAID
DOCUMENT. ENCLOSED IN A SEALED ENVELOPE(S) WITH POSTAGE
THEREON FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT BOX SO
PROVIDED AT PELICAN BAY STATE PRISON, CRESCENT CITY, CA, 95531-7500
AND ADDRESSED AS FOLLOWS:

| | |
|---|---|
| OFFICE OF THE CLERK U.S. | AND CMN THE CLERK |
| DISTRICT COURT, NORTHERN | OF THIS DISTRICT COURT PLEASE |
| DISTRICT OF CALIFORNIA | SERVE THE ATTORNEY GENERAL |
| 450. GOLDEN GATE AVE | A COPY OF THIS WRIT OF |
| SAN FRANCISCO CALIFORNIA | HABEAS/CV-08-3298 PJ.H (PR) |
| 94102 | |

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE
AND CORRECT.

DATED THIS 28TH DAY OF JULY, 20.08

SIGNED: _____
(DECLARANT SIGNATURE)
DAVID VELASQUEZ

REV. 12/06

## INTRODUCTION

ON MAY 5th, 2006, PETITIONER WAS REMOVED from the CALIPARRIA State PRISON GENERAL POPULATION YARD on ACCOUNT OF AN INFORMATION which WAS RECEIVED by the Institutional GANG INVESTIGATION UNIT (IGI), which ALLEGED that the PETITIONER WAS being INVESTIGATED to substantiate If he IS AN ASSOCIATE of the MEXICAN MAFIA PRISON GANG. ON JULY 12th, 2006, ASSISTANT Institutional GANG INVESTIGATOR E. DUARTE disclosed All INFORMATION USED to show PETITIONER ASSOCIATED with ACTIVE MEXICAN MAFIA PRISON GANG MEMEMBER. [WILL be REFERED to AS "EME" throughout].

The following IS the EVIDENCE discovered AND disclosed AS A RE-SULT of the INVESTIGATION:

1. CONFIDENTIAL CALIFORNIA DEPARTMENT of CORRECTIONS AND Rehabi-litation (CDCR) 128 B, dated JUNE 20th, 2006, Authored by OFFICER E. DUARTE, details the discovery of the Phone/Address book of PETITIONER which CONTAINED A KNOWN NAZI drop Add-RESS FOR COMMUNICATING with EME (SUPRA) MEMbERS/ASSOCIATES. [MOREOVER] It discloses that PETITIONER MAINTAINED this address WHERE A third PARTY CAN, ASSIST him IN FORWARDING GANG COMM-UNICATIONS without the detection of Staff.

2. CONFIDENTIAL MEMORANDYM dated JULY 10, 2004, Authored by E. DUARTE, IDENTIFIED PETITIONER AS POSSESSING WRITTEN MAT-ERIAL dIRECTLY RELATED to EME PRISON GANG ACTIVITIES.

3. CDC (SUPRA) 128 B dated JUNE 20, 2006, Authored by OFFICE E. DUARTE details the discovery of SEVERAL MATERIALS located INSIDE A letter Addressed to PETITIONER. The Contents CONTAINED the SYMbol Ident-IFIED AS the "MACHACHONEL", which SIGNIFIES the NUMbER "13". The NUMbER "13" CORRESPONDS to the letter "M" which IN SPANISH IS PRONOUNCED EME. In the PRISON cultURE the "13" And the letter "M" dIRECTLY CORRESPOND to the EME PRISON GANG. WELL KNOWN EME MEMbERS USE this SYMbol to IdENTIFY themSELVES with the EME.

SUbSEQUENTLY, PETITIONER WAS VALIdATED AS AN ASSOCIATE of the EME ON AUGUST 23, 2006, The forEGOING THREE SOURCE dOCUMENTS WAS USED to REACH this dECISION, ShortLY thereAFTER the Institutional Classification CommITTEE MOVEd to have PETITIONER tRANSFEREd to PELICAN BAY SEGREGATEd HOUSING UNIT FOR AN INdETERMINATE PlACEMENT. PETITIONER APPEAlEd.

/-

BY WAY of ADMINISTRATIVE APPEAL PETITIONER CONTESTED the
ACCUSATION of hIM bEING AN ASSOCIATE of the MEXICAN MAFIA PRISON
GANG (EME) ON SEPTEMBER 20, 2006 (SEE EX. J INMATE APPEAL LOG NO. CAL-S-
06-02444). PETITIONER ALLEGED IN hIS APPEAL that the EVIDENCE USED
to VALIDATE hIM AS AN ASSOCIATE of the EME WAS; DISCRIMINATORY,
VAGUE AND OVER-bROAD, CONCOTTED, MISREPRESENTED AND MANUFACTURED.
NEVERTHELESS, PETITIONER'S APPEAL WENT to NO AVAIL, AS he WAS dENIED
ON ALL lEVELS of ADMINISTRATIVE REVIEW AVAILABLE, WhICH bRING
MATTERS to the INSTANCE, WHEREIN PETITIONER IS NOW SEEKING RELIEF
AND JUSTICE fROM thIS HONORAble COURT bY WRIT of HAbEAS CORPUS.

2

## PARTIES

PETITIONER DAVID VELASQUEZ, IS A PRISONER OF THE STATE OF CALIFORNIA INCARCERATED AT CALIPATRIA STATE PRISON.

L.E. SCRIBNER IS THE WARDEN OF CALIPATRIA STATE PRISON AND LEGAL CUSTODIAN OF PETITIONER.

JAMES GOMEZ IS THE DIRECTOR OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR) AND IS RESPONSIBLE FOR THE OPERATION OF EACH OF ITS STATE PRISONS, INCLUDING THE OPERATION OF CALIPATRIA STATE PRISON.

# STATEMENT OF FACTS

ON MAY 5th 2006, PETITIONER WAS PLACED IN ADMINISTRATIVE SEGREGATION (AD SEG) PENDING INVESTIGATION INTO HIS GANG STATUS AND INVOLVEMENT WITH THE MEXICAN MAFIA PRISON GANG (EME). (SEE Ex A . CDC 114-D LOCK UP ORDER.) THE INVESTIGATION INTO PETITIONER IN-VOLVEMENT BEGAN ON THURSDAY, APRIL 27, 2006 WHEN ASSISTANT INSTITUTIO-NAL GANG INVESTIGATOR E.DUARTE, SEARCHED THE PROPERTY OF PETITIONER AND DISCOVERED SEVERAL MATERIALS LOCATED INSIDE A LETTER ADDRESSED TO PETITIONER. E.DUARTE REPORTED THAT IN HIS REVIEW OF THE CONTENTS HE, DISCOVERED THE SYMBOL OF TWO (2) LINES THREE (3) DOTS ON THE BACK OF TH FORM. E.DUARTE, NOTED IN A 128-B (INFORMATIVE CHRONO) THAT THROUGH HIS YEARS OF EXPERIENCE, AS A GANG INVESTIGATOR, HE KNOWS THIS SYMBOL TO BE CALLED "THE MACTLACTLOME" WHICH IS THE MAYAN SYMBOL FOR THE NUMBER (13) THIRTEEN AND IS USED BY THE SOUTHERN HISPANIC IN-MATES TO SHOW LOYALTY TO THE (EME). (SEE Ex.B .E.DUARTE 128-B ). ON JULY 12,2006, E.DUARTE DISCLOSED ALL INFORMATION USED IN THE EFFORT TO VALIDATE PETITIONER AS AN ASSOCIATE OF THE (EME). THE FOLLOWING THREE (3) SOURCE DOCUMENTS WAS DISCOVERED AS A RESULT OF THE INVESTIGATION : 1.) POSSESSION OF AN ADDRESS WHERE A THIRD PARTY CAN ASSIST HIM [PETITIONER] IN FORWARDING GANG COMMUNICATIONS. THE ADDRESS IS USED BY MEXICAN MAFIA MEMBERS/ASSOCIATES." (SEE Ex.C. Confid-ENTIAL DISCLOSURE FORM.) :2.) POSSESSION OF WRITTEN MATERIAL REGARDING MEXICAN MAFIA (EME) PRISON GANG ACTIVITY, BY USING WRITTEN CORRESPONDENCE." (SEE Ex.D .CONFIDENTIAL DISCLOSURE FORM.) :3.) "MATERIAL THAT CONTAINED THE SYMBOL IDENTIFIED AS THE "MACTLACTLOMEL", WHICH SIGNIFIES THE NUMBER "13". (SEE Ex.E. CONFIDENTIAL DISCLOSURE FORM.)

BASED ON THE INFORMATION CONTAINED IN THE AFOREMENTIONED DOC-UMENTS, PETITIONER WAS SAID TO HAVE DEMONSTRATED THAT HE IS AN ACTIVE ASSOCIATE OF THE (EME) PRISON GANG AND THUS WAS, RECOMMENDED BY THE INSTITUTIONAL GANG INVESTIGATOR TO BE VALIDATED AS SO. (SEE EX. F GANG INFORMATION CHRONO.)

4.

On Wensday July 17, 2006, Gang Investigator M. Tamayo contacted Petitioner in his housing unit to conduct a Prevalidation Inter- view. Petitioner was given the opportunity to dispute the information used in the validation. In part, Petitioner stated the following: "On Confidential Memorandum dated July 10, 2006, had the WRONG NAME AND CDC NUMBER ON IT." M. Tamaya. took notice of this error and avered that he would redress this error by putting the correct name and CDC number on it. (See Ex. F Validation Interview.) Moreover. In the validation Interview Petitioner submitted a written validation statement which read inpart that the first of the three (3) sources used to designate him as an associate of the (EmE) was false: "I [Petitioner] did not use these symbols to promote any kind of gang activity. I did not even know this could be used as evidence to substantiate Prison gang (membership/ association), I write poems and collect them as well. And I also draw. to be these symbols are just part of Mexican History, nothing more." As to the second source Petitioner avered the following: "This is not true Im not even sure what address the I.G.I. are talking about; I do not communicate with any Mexican Mafia members/ Associates. At the time I was Allegedly identified I was already in (Ad-seg). There is no such address." And regarding source three Petitioner stated: "This Information is fabri- cated, I haven't had any material written or otherwise regarding Mexican Mafia Activities. This is a Mistake!, The disclosure form doesnt even have my name on it. It has someone else's name: Eddie chavez #H-25244..." (See Ex. G Validation statement). M. Tamavo, concluded this Iterview stating in his conclusion that the Information indicates that Petitioner is an associate with active (EmE) members/ associates. And thus a Validation package is being submitted to the Office of Correctional Safety requesting Petitioner be validated as an active associate of the EmE (see Ex. F (supra)).

On August 23, 2006, Petitioners was validated as an associate of the Mexican Mafia Prison gang (see Ex. H 128-B2). Shortly thereafter Petitioner was issued a new Lock-No order which stated in part that Petitioner would be retained in (AO-seg) pending Administrative review and transfer to a Security Housing Unit (SHU). (see Ex. I. 114-J)

5.

On September 20th, 2006, Petitioner filed an appeal on this decision to validate him as an active associate of the (EME). In his appeal Petitioner alleged that the information used to validate him was false, unreliable, insufficient and discriminatory.

Nevertheless, Petitioners appeal was denied on all administrative levels, based on the conclusion that; "In view of the evidence there was no good cause to modify the institutional findings. (See Ex. J Inmate Appeal and supplement; Ex. J.a. Second level decision; and Ex. J.b. Directors level Decision.)

Petitioner, based upon the foregoing believes and thereby alleges that the CDoCR Administrative Reviewers made a mistake of Judgement by Affirming Petitioners validation as an "EME" associate, when there were clear contradictions in the evidence relied upon to designate him as an associate. Petitioner brought light to these partialities in his appeal. For instance the initial document discovered which was said to be the two lines and three dot symbol (⠒) which was said to be a "MAYAN" symbol thats called "MacHacHoME" which is used to represent the number "13" by southernHispanics to show there loyalty to the Mexica Mafia Per "experienced" and "trained" IGI officer E. Duarte (See Ex. B)

However. In contrast to officer E. Duarte the three dots and two lines are cultural symbols which merely represents that a prisoner is from Southern or Northern California, Thus the AZTEC NOT MAYAN symbols are written respectively; ⠒ for Southerners (13) And ⠒ for Northeners. Moreover, the word "MacHacHoME" when translated means "NOTHING". Thus, It is because of false, unreliable and insufficient evidence as this that Petitioner submits this writ for Habeas Corpus to this Honorable court for a fair and Impartial Review. (see, Exhibit K. "Self-serving declaration.)

· 6 ·

# CONTENTIONS

## I.

PRISON GANG VALIDATION AND SEGREGATED HOUSING UNIT TERM VIOLATES PETITIONERS FOURTEENTH AMENDMENT RIGHT UNDER THE DUE PROCESS CLAUSE, SIXTH AMENDMENT RIGHT TO A FAIR TRIAL, AND EIGHTH AMENDMENT RIGHT TO EXEMPTION FROM CRUEL AND UNUSUAL PUNISHMENT.

## II.

PRISON OFFICIALS HAVE VALIDATED PETITIONER AS AN ACTIVE PRISON GANG MEMBER/ASSOCIATE AND RETAINED HIM IN THE SECURITY HOUSING UNIT BASED ON FALSE, UNRELIABLE AND INSUFFICENT INFORMATION WHICH CONSTITUTED A VIOLATION OF HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS THEREBY CREATING A LIBERTY INFRINGEMENT MORE-OVER PETITIONERS SIXTH AMENDMENT RIGHTS WAS VIOLATED UNDER THE FAIR TRIAL CLAUSE.

## III.

PRISON OFFICIALS HAVE A POLICY AND PRACTICE OF PLACING AND RETAINING PRISONERS IN THE SECURITY HOUSING UNIT BASED ON MERE ALLEGATIONS OF GANG AFFILIATION, RATHER THAN MISCONDUCT, WHICH THEREBY CREATES A LIBERTY ISSUE IN VIOLATION OF PETITIONERS 14th AND 8th AMENDMENT RIGHTS.

## IV.

PRISON OFFICIALS ENFORCE VAGUE AND OVERBROAD REGULATIONS THAT INFRINGE UPON PETITIONERS' RIGHTS TO FREE AND INNOCENT SPEECH AND CONDUCT WHICH ULTIMATELY CONSTITUTES A VIOLATION OF HIS FIRST AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION.

$\underline{V}.$

PRISON OFFICIALS ARE ENFORCING PRISON GANG
REGULATIONS THAT HAVE NOT BEEN PROMULGATED
PURSUANT TO THE ADMINISTRATIVE PROCEDURES
ACT (APA) WHICH ULTIMATELY CONSTITUTED A VIO-
LATION OF PETITIONERS DUE PROCESS RIGHTS,
UNDER THE FOURTEENTH AMENDMENT OF THE UNITED
STATES CONSTITUTION.

8.

# STATEMENT OF FACTS

## I.

PRISON GANG VALIDATION AND SEGREGATED HOUSING UNIT
TERM VIOLATES PETITIONERS FOURTEENTH AMENDMENT RIGHT
UNDER THE LIBERTY AND DUE PROCESS CLAUSE, SIXTH AMEND-
MENT RIGHT AND EIGHT AMENDMENT RIGHT.

## Supporting Facts

### SEGREGATION

1. Petitioner has a created-state liberty interest
In freedom from administrative segregation and SHU con-
finement (Cal. Code Regs. tit 15, Sections 3335(a), 3339(a)
and 3341.5(c)(3))

2. Once a prisoner has been validated as a prison
Gang Associate he is generally placed in the SHU for an
indeterminate term. This policy, however, "is not absolute".
An unspecified number of gang members or associates are
permitted to remain in the general population at the dis-
cretion of prison officials (Cal. code Regs., tit 15, Sec. 3378(d))

3. To determine what would constitute an "immediate
threat" or "endangerment", the court should refer to the relevant
And Governing regulations. (cal. Code Regs., tit 15, Sec. 3000 "Gang"
and 3023 "Activity")

4. Petitioner's SHU placement constitutes an atypical and
And significant hardship.

5. Petitioner as a life prisoner will not be paroled as
long as he is housed in the SHU (or will not be able to earn credits
towards reducing his sentence).

6. Retention of Petitioner in the SHU is violative of the due
Process clause and the prohibition of cruel and unusual punish-
ment and infringes upon his right of free/innocent speech and
conduct.

7. SEC. "Memorandum of Points and Authorities" at Page 6 (1) et. seq.

## II.

PRISON OFFICIALS HAVE VALIDATED PETITIONER AS AN ACTIVE PRISON GANG ASSOCIATE AND RETAINED HIM IN THE SECURITY HOUSING UNIT BASED ON FALSE, UNRELIABLE AND INSUFFICENT INFORMATION which constituted A VIOLATION OF HIS 14th AMENDMENT RIGHTS to DUE PROCESS thereby CREATING A LIBERTY INFRINGEMENT. MOREOVER PETITIONERS SIXTH And EIGTH AMENDMENT RIGHTs WAS VIOLATED.

1. ON AUGUST 23, 2006 PETITIONER WAS VALIDATED AS AN ACTIVE PRISON GANG ASSOCIATE of the MEXICAN MAFIA PRISON GANG (EME). However, PETITIONER beLIEVES And thereby ALLEGES that the INFORMATION AND/OR documentARY EVIDENCE RELIED UPON to VALIDATE him IS FALSE, UNRELIABLE And INSUFFICIENT for the following REASONS:

ITEM No. 1: (Exhibit C, hereto)

a. WITH RESPECT to the CONFIDENTIAL INFORMATION, THERE IS NO documentATIONS/LETTER(S).

(i.) dETAILING "GANG ACTIVITY" WRITTEN OR RECEIVED by PETITIONER.

(ii.) SubstantIATING that PETITIONER ONCE CORRESPONDED through this Address

(iii.) of SPECIFIC ACTS of GANG ACTIVITY ON ANY GIVEN OCCASION.

(iv) WHeATHER documents from the Address would lead the dECISION MAKER to beLIEVE GANG RELATED MESSAGES WAS WRITTEN by OR to the PETITIONER.

b. SPECULATES IF GANG ACTIVITY WAS EVER COMMUNICATED by PETITIONER.

ITEM No. 2: (Exhibit D, hereto.)

a. WITH RESPECT to the CONFIDENTIAN INFORMATION, THERE IS NO StATEMENT.

(i.) of SPECIFIC ACTS of GANG ACTIVITY ON ANY GIVEN OCCASION.

(ii.) SubstantIATING that PETITIONER KNOWINGLY PROMOTED, furthed OR ASSISTED A PRISON GANG IN COMMITING UNlAWful ACTS OR ACTS of MISCONDUCT CLASSIFIED AS SERIOUS.

(iii.) SHOWING PETITIONER POSED AN IMMEDIATE THREAT to the SAFETY of others OR ENDANGERED INSTITUTIONS SECURITY.

10.

b. Alleges Information, conduct, speech or association that has nothing to do with Gang activity.

c. Alleges Information that discriminates against Race, culture and Creed.

d. Alleges Information that discriminates against, creativity, Art and Poetry. (See Exhibit K, hereto.)

<u>ITEM No. 3</u>: (Exhibit B, hereto.)

a. With respect to the confidential Information, The Articulation by staff Relied upon Alleges Information about a Particular symbol.

(i.) That has no specific association with a Prison Gang.
(ii.) That merely represent that a Prisoner is from Southern California
(iii.) That interprets the meaning of symbols over broadly.
(iv.) That sterotype Hispanic Prisoners.
(v.) That discriminates against Hispanic Prisoners.

b. Alleges Information about the word meaning of "Nactlactlonel".
(i.) Thats erroneous
(ii.) Thats sterotypical
(iii.) discriminates against Hispanic Prisoners.

c. Alleges Information about a symbol.
(i.) That does not mean "Nactlactlonel"

d. With respect to the confidential Information, there is no evidence.
(i.) detailing whether the interpretation of the word meaning of "Mactlactlonel" is first hand or heresay.
(ii.) of specific acts of Gang activity done in the name of "Mactlactlonel" on any given occasion
(iii.) detailing that this specific symbol is used by Mexica Mafia Members/Associates exclusively.

## II. SEGREGATION

1. Petitioner has a state-created liberty interest in freedom from Administrative Segregation and SHU confinement (Cal. Code Regs. tit. 15, Sections 3335(a), 3339(a) and 3341.5 (c)(3))[2]

---

2. <u>Madrid</u>, 889 F. Supp. at 1270-71

2. Once a prisoner has been validated as a prison gang associate he is generally placed in the SHU for an indeterminate term. This policy, however, "is not absolute". An unspecified number of gang members or associates are permitted to remain in the general population at the discretion of prison officials[3] (Cal. Code Regs., tit 15, sec. 3378(d))

3. The segregation of an alleged prison gang member or associate necessitates a further analysis. For instance, prison officials must determine whether or not other factors exist to support the conclusion that the prisoner poses an "immediate threat" to the safety of others or "endangers institutions security" (Cal. Code Regs., tit. 15, sections 3335 (a), 3339 (a) and 3341.5 (c)(3))

4. To determine what would constitute an "immediate threat" or "endangerment", the court should refer to the relevant and governing regulations. (Cal. Code Regs., tit. 15, sections 3000 "gang" and 3023 "activity")

5. A reading of the regulations requires prison officials to show that petitioner knowingly promoted, furthered or assisted a prison gang in committing unlawful acts or acts of misconduct classified as serious (Id.) Petitioner's SHU placement/retention does not meet the requirements and therefore is unwarranted.

6. Since the same items of information used in petitioner's alleged gang validation package were used to place him the SHU, petitioner incorporates and makes reference, to those facts and contentions outlined in paragraph No. 1, above. The information does not support any finding that petitioner posed an "immediate threat" or endangered institution security when the prison officials acted to (place/retain) petitioner in the SHU. Specifically, that petitioner did not knowingly promote, further or assist a prison gang in committing unlawful acts or acts of misconduct classified as serious on September 7, 2006. (Exhibit I, hereto.)

---

3. Id. at 1241, fn 18 b

7. Petitioner's SHU placement constitutes an atypical and significant hardship.

8. The SHU is a prison within a prison where prisoners are denied virtually all privileges. The SHU is based on a sensory deprivation and extreme isolation model. SHU prisoners receive all meals in their cells, are not allowed to participate in training or educational activities, are not allowed contact visits and have no phone access. SHU prisoners spend 22 1/2 hours per day in their windowless cells. They are always shackled when they leave their cells and the "yard" where they exercise is really a larger concrete cell where there is no exercise equipment, no view of the outside world or sun. Psychologists and courts have determined that long-term confinement in the SHU pushes boundaries of what human beings can endure. [4]

9. Petitioner as a life prisoner will not be paroled as long as he is housed in the SHU (or will not be able to earn credits towards reducing his sentence).

10. Retention of petitioner in the SHU is violative of the due process clause and the prohibition of cruel and unusual punishment and infringes upon his right of free/innocent speech and conduct.

11. See, "Memorandum of Points and Authorities" at page 6(i) et. seq.

---

4. <u>Madrid</u>, 889 F.Supp at 1227-37

## III.

PRISON OFFICIALS HAVE A POLICY AND PRACTICE OF PLACING AND RETAINING PRISONERS IN THE SECURITY HOUSING UNIT BASED ON MERE ALLEGATION OF GANG AFFILIATION, RATHER THAN MISCONDUCT, WHICH THEREBY CREATES A LIBERTY ISSUE IN VIOLATION OF PETITIONERS 14th AND 8th AMENDMENT RIGHTS.

SUPPORTING FACTS

## I. POLICY AND PRACTICE

1. PRISON OFFICIALS HAVE A POLICY AND PRACTICE OF PLACING AND RETAINING PRISONERS IN THE SHU BASED ON MERE ALLEGATIONS OF GANG AFFILIATION, RATHER THAN FOR MISCONDUCT. (SEE Cal Code Regs. tit 15, SECTION 3341.5 (c)(2)(A)(2)).

## II. SEGREGATION

2. ON SEPTEMBER 7/06, PETITIONER WAS ORDERED TO BE PLACED/RETAINED IN THE SHU BASED ON ALLEGATIONS THAT HE IS A PRISON GANG ASSOCIATE. (SEE EXHIBIT I, HERETO.)

3. PETITIONER DENIES THAT HE IS A PRISON GANG ASSOCIATE. EVEN ASSUMING THAT HE IS, ASSOCIATED WITHOUT MORE DOES NOT WARRENT AN INDETERMINATE SHU TERM.

4. PETITIONER HAS A STATE-CREATED LIBERTY INTEREST IN FREEDOM FROM ADMINISTRATIVE SEGREGATION AND SHU CONFINEMENT (CAL. CODE REGS. tit 15, SECTIONS 3335 (a), 3339 (a) AND 3341.5 (c) (3)) [2]

5. THE SEGREGATION OF AN ALLEGED PRISON GANG MEMBER OR ASSOCIATE NECESSITATES A FURTHER ANALYSIS. FOR INSTANCE, PRISON OFFICIALS MUST DETERMINE WHETHER OR NOT OTHER FACTORS EXIST TO SUPPORT THE CONCLUSION THAT THE PRISONER POSES AN "IMMEDIATE THREAT" TO THE SAFETY OF OTHERS OR "ENDANGERS INSTITUTIONS SECURITY" (CAL. CODE. REGS., tit 15, SECTIONS 3335 (a), 3339(a) AND 3341.5(c)(3)).

[2] MADRID, 889 F. Supp at 1227-37

14.

6. To determine what would constitute an "Immediate threat" or "Endangerment", the court should refer to the relevant and governing regulations. (Cal. Code Regs. tit. 15, Sections 3000 "Gang" and 3023 "Activity")

7. A reading of the regulations requires prison officials to show that Petitioner Knowingly Promoted, furthered or assisted a Prison Gang in committing unlawful acts or acts of misconduct classified as serious (id.) Petitioner SHU Placement/Retention does not meet the requirements and therefore is unwarranted.

8. Petitioner's SHU Placement constitutes an atypical and significant hard ship.

9. The SHU is a Prison within a Prison where Prisoners are denied virtually all privilages. The SHU is based on a sensory deprivation and extreme isolation model. SHU Prisoners receive all meals in their cells, are not allowed to participate in training or educational activities, are not allowed contact visits and have no phone access. SHU Prisoners spend 22 1/2 hours per day in their windowless cells. They are always shackled when they leave their cells and the "yard" where they exercise is really a larger concrete cell where there is no exercise equipment, no view of the outside world or sun. Psychologist and courts have determined that long-term confinement in the SHU Pushes boundaries of what human beings can endure.[3]

10. Petitioner as a life Prisoner will not be Paroled as long as he is housed in the SHU.

11. Retention of Petitioner in the SHU is violative of the due Process clause and the Prohibition of cruel and unusual Punishment and infringes upon his right of free/innocent speech and conduct.

12. See "Memorandum of Points and Authority" at Page (6)(i), et.seq.

---

[3] Madrid, 889 F. Supp at 1227-37

## IV.

PRISON OFFICIALS ENFORCE VAGUE And Overbroad REGULATIONS that INFRINGE UPON PETITIONER'S RIGHT to FREE AND INNOCENT SPEECH AND CONDUCT WHICH ULTIMATELY CONSTITUTES A VIOLATION OF HIS FIRST AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION.

"PRISON OFFICIALS ENFORCE VAGUE And OVER baard REGULATIONS, that INFRINGE UPON PETITIONER'S FREE And INNOCENT SPEECH AND CONDUCT."

## I. Regulations

1. PRISON OFFICIALS CLAIM that PETITIONER IS IN VIOLATION of CALIFORNIA Code of REGULATIONS, TITLE 15, SECTIONS 3023 "GANG ACTIVITY". (SEE Exhibit , hereto.)

2. SECTION 3023 does not GIVE CLEAR NOTICE of the SPEECH or CONDUCT PROHIBITED. RESULTINGLY, PETITIONER HAS, BEEN VALIDATED AS A PRISON GANG ASSOCIATE And Placed/RETAINED IN the SHU for POEMS AND ART. (SEE Exhibit K, hereto.)

3. The SPEECH OR CONDUCT outlINED IN PARAGRAPH No. 2 IS NOT INDICATIVE of ANY unlawful ACT OR ACT of MISCONDUCT.

## II. SEGREGATION

4. ON SEPTEMBER 7th 2006, PETITIONER WAS ORDERED to BE Placed// RETAINED IN the SHU (SEE, Exhibit I, hereto.)

5. PETITIONER HAS A STATE-CREATED liberty INTEREST IN freedom FROM ADMINISTRATIVE SEGREGATION And SHU CONFINEMENT (Cal. Code REGS. tit-15, SECTIONS 3335(a), 3339(a) And 3341.5(c)(3))

6. The SEGREGATION OF AN ALLEGED PRISON GANG MEMBER OR ASSOCIATE NECESSITATES A further ANALYSIS. FOR INSTANCE, PRISON OFFICIALS MUST determINE whether OR NOT OTHER FACTORS EXIST to SUPPORT the CONCLUSION that the PRISONER POSES AN "IMMEDIATE THREAT" to the SAFETY OF others OR "ENDAGERS INSTITUTIONS SECURITY"[2] (Cal. Code. REGS., tit. 15, SECTIONS 3335(a), 3339(a) And 3341.5(c)(3))

2. Nadrid, 889 F.Supp. at 1270-71

7. To determine what would constitve an "immediate threat" or "endangerment", the court should refer to the relevant and governing regulations. (Cal. Code Regs., Tit 15, Sections 3000 "Gang" and 3023 "Activity")

8. A reading of the regulations requires prison officials to show that petitioner knowingly promoted, furthered or assisted a prison gang in committing unlawful acts or acts of misconduct classified as serious (Id.) Petitioner's SHU Placement/Retention does not meet the requirements and therefore is unwarranted.

9. See, "Memorandum of Points and Authorities" at page 6 (1), et. seq.

17

# V.

PRISON OFFICIALS ARE ENFORCING PRISON GANG REGULATIONS THAT HAVE NOT BEEN PROMULGATED PURSUANT to the ADMINISTRATIVE PROCEDURE Act (APA) WHICH ultimately CONSTITUTED A VIOLATION OF PETITIONERS DUE PROCESS RIGHTS. UNDER the FOURTEENTH AMENDMENT OF the UNITED STATES Constitution.

"PRISON officials ARE ENFORCING PRISON GANG REGULATIONS that have not been Promulgated Pursuant to the ADMINISTRATIVE Procedures Act (APA)"

Supporting facts:

I. Policy And Practice

1. The REGULATIONS REGARDING PRISON GANG VALIDATION, SEGREGATION OF GANG AFFILIATES And debriefing (OR RENUNCIATION etc.) have NEVER been Promulgated Pursuant to the APA; And thus, such REGULATIONS ARE UNDERGROUND And legally INVALID. (CALIFORNIA Penal Code Section 5058 (a).)

2. The REGULATIONS REGARDING PRISON GANG VALIDATION, NOTICE of the tatoos And symbols that the CALIFORNIA department of CORRECTIONS DEEMS to be GANG, RELATED have NEVER been Promulgated Pursuant to the APA; And thus such REGULATIONS ARE UNDERGROUND And legally INVALID. (CAL. PEN. Code, SECTION 5058 (a); AND Also SEE PEOPLE V. LOPEZ (1988) 66 Cal. App. 4th 615, 630 ("All ARE ENTITLED to BE INFORMED As to what the state COMMANDS OR FORBIDS")).

"PRAYER FOR RELIEF"

PETITIONER IS without REMEDY SAVE by WRIT of habEAS CORPUS.
WheREfore, PETITIONER PRAYS that the CouRt:

  1. IssvE And ordER to Show CAUSE;
  2. Allow PETITIONER to conduct discovER;
  3. Conduct AN EVIdENTIARY hEARING;
  4. DEClARE PETITIONER'S RIGHts;
  5. APPOINT counsel And AWARd REASONAble ATToRNEY fEES;
  6. GRANT WRIT of habEAS CORPUS And ordER RESPondENT to:

## GROUNd 1:

  a. EXPUNGE fROM PETITIONER'S PRISON FILE falsE, uNRElIAble And INSufficiENT INfoRMATION USEd to vALIdATE PETITIONER AS AN ACTIVE PRISON GANG (MEMbER/AffiliATE) And PlACE hIM IN the SHU foR AN INdETERMINATE tERM.
  b. RElEASE fROM SHV.

## GROUNd 2:

  a. EXPUNGE fROM PETITIONER'S PRISON filE the falsE, uNRElIAblE And INSufficiENt INformATION used to vAlIdATE PETITIONER And RETAIN PETITIONER IN the SHU.
  b. CEASE the IMPlEMENTATION of the EXCEPtiON clAUSE uNdER Cal. CodE REGS. tit.15, SEC. 3341.5(c)(5) which Allows foR the SHU RETENTION of PRISONERS IN SPITE of thEIR dESIGNATION AS INACTIVE PRISON GANG MEMbERS OR ASSOCIATES.
  c. PROMUlGATE A REGUlATION that will REAVIRE DRB to GIVE PRISONERS WRITTEN NoTICE of SPECIFIC fActoRS RELIEd ON IN FINdINGS that conclude PRISONERS ARE AN INMEdIATE thREAT to othERS OR INStitVtioNAl SECURITY.
  d. CEASE the USE of PASt MISconduct that doES NOt REASONAblY suPPORt thE DRB'S CONClUSION that PRISONERS PoSE A PRESENT And IMMEdIATE thREAt to othERS OR INStitUTioNAl SECURITY.
  e. CEASE the USE of PASt OR PRESENt MISconduct that IS MINOR IN NAtURE OR doES NOt WARRENt A SHU TERM If SAId MISconduct had bEEN COMMItted IN GENERAl PRISON PoPulation.

f. Cease the use of a Prisoner's history of criminal convictions to support the placement or retention of prisoners in the SHU insomuch as said conviction were not the result of crimes presently committed while in prison.

g. Cease the use of any information that does not reasonably support the DRB's conclusion that prisoners pose a present and immediate threat to others or institutional security

h. Consider alleged prison gang member or associates for SHU release within a year if those prisoners have not been involved in gang activity for a period one (1) year.

i. Release Petitioner from the SHU.

GROUND 3:

a. Expunge from Petitioner prison file the false, unreliable and insufficient information used to place Petitioner in the SHU for an indeterminate term.

b. Cease the enforcement of regulations/practices/procedures relating to prison gang validation, debriefing (renunction), and segregation of alleged prison gang affiliates unless and until respondents promulgate said regulations pursuant to the Administrative Procedure Act.

C. Release Petitioner from the SHU.

GROUND 4:

a. Cease the policy and practice of placing and/or retaining prisoners in the SHU based on mere gang affiliation.

b. Release Petitioner from the SHU.

GROUND 5:

a. Promulgate clear and fair regulations regarding the definition of "gang activity", "gang", etc., and validation of prisoners as prison gang affiliates and for their placement/retention in the SHU for an indeterminate term.

b. Grant any other relief that the court deems proper and just.

Respectfully Submitted,

Date: 7.28.08                    20.       David Velasquez

DAVID VELASQUEZ IN PRO Per

# MEMORANDUM of POINTS AND AUTHORITY

## STANDARD OF REVIEW

PRISONERS IN CALIFORNIA CONTINUE to HAVE A STATE-CREATED LIBERTY INTEREST IN FREEDOM FROM ADMINISTRATIVE SEGREGATION (MADRID V. GOMEZ, (N.D. CAL. 1995) 889 F.SUPP. 1146, 1271; Code REGS. tit. 15, SECTIONS 3335 (a), 3336, 3339 (a) AND 3341.5 (c)(3). HOWEVER, following the SUPREME COURT DECISION SADIN V. CONNER (1995) 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed. 2d 415, PRI-SONERS MUST SHOW that the DEPRIVATION of ANY STATE-CREATED LIBERTY INTEREST POSES AN AYTYPICAL AND SIGNIFICANT hardship ON the PRISONER (Id. at 483, 115 S.Ct at 2300).

THE COURT IN MADRID MADE EXTENSIVE factual findings REGARDING the hardships IMPOSED ON PRISONERS ASSIGNED to the PELICAN BAY STATE PRISON (PBSP) SECURITY HOUSING UNIT (SHU). (Id. at 1227-1237) SEE ALSO, JONES V. NORAN (N.D. CAL. 1995) 900 F.SUPP. 1267, 1275 (distinguishing SHU PLACEMENT FOR AN INDETERMINATE TERM FROM the 30 DAY TEMPORARY ADMINISTRATIVE SEG- REGATION AT ISSUE IN SADIN V. CONNER) SEE ALSO, SYNDER V. ARCHIE, filed 2/2/98) CASE No. 5-92-1814-GEB-JFM-1° [N.D. CAL.] (finding AS A MATTER of LAW, that PELICAN BAY SHU IMPOSES "AYTYPICAL AND SIGNIFICANT hardship")

DUE PROCESS REQUIRES that A DECISION to SEGREGATE A PRISONER be based on "SOME factual INFORMATION" (MADRID, at 1274) AND IN CASES of GANG AFFILIATION, PRISON OFFICIALS MUST FIRST DESIGNATE the PRISONER AS being A "CURRENT ACTIVE" GANG AFFILIATE PRIOR to ANY DECISION to RETAIN the PRI- SONER IN SEGREGATION FOR AN INDETERMINATE PERIOD. (MADRID, at 1273 (CITING, TOUSSAINT V. ROWLAND, 711 F.SUPP. 536, 540, 541-542, n. 15, 543)

## I. GANG POLICY

THERE ARE two DISTRICT PROCESSES INVOLVED HERE: ONE FOR DET- ERMINATION WHETHER A PRISONER IS A VALIDATED PRISON GANG AFFILIATE. AND ONE FOR DETERMINING WHETHER the PRISON GANG AFFILIATE should be HOUSED IN SEGREGATION. HOWEVER, IT IS IMPORTANT to NOTE that there IS NO "AB- SOLUTE" WRITTEN POLICY REQUIRING the SEGREGATION of ALLEGED GANG AFFILI- ATES (ASSOCIATES OR MEMBERS) FOR MERE GANG AFFILIATION (MADRID, AT 1241,

21

n.18b; SEE Also, Cal Code Regs. tit 15 Section 3341.5 (c)(2)(A)(2). Before PRISON officials can segregate an Alleged Gang Affiliate, they Must Show that the PRISONER Poses An "IMMEDIATE threat" to the safety of others or institution security (i.e. involvement in gang activity) (Cal. Code Regs. tit. 15, Section 3335(a), 3341.5 (c)(2)(A)(2), 3341..5 (c) (5), 3378 (d) And 3023).

## A. Validation

"Consistent with constitutional command, departmental regulations require at least three reliable pieces of evidence to support a gang validation" (Medina v. Gomez, 1997 U.S. Dist. Lexis 12208, order by Judge Henderson filed August 15, 1997; see Also Madrid, At 1242)'

## B. Segregation
### 1. Placement

Once a prison gang validation is imposed, PRISON officials Must determine whether specific case factors exist to support a conclusion that a prisoner poses an "immediate threat" to the safety of others or institution security (Madrid, At 1271 (citing, Cal. Code Regs. Section 3335(a)). To determine what constitutes an "Immediate threat" in gang validation cases we must turn to relevant case law And PRISON Regulations.

First, As previously Mentioned, PRISON officials must first designate the PRISONER AS A "current active" Gang Affiliate PRIOR to ANY decision to Place this PRISONER IN SEGREGATION for An Indeterminate Period. (Madrid, at 1273, (citing, Toussaint v. Rowland, 711 f. Supp. 536, 540, 541-542, n.15, 543). And Secondly, PRISON Regulations Prohibit PRISONERS from knowingly, Promoting, further-ing or Assisting A, PRISON GANG in "unlawful Acts or Acts of Misconduct classified As serious" (Cal. Code Regs. tit. 15, Section 3000 "GANG" And 3023 "GANG Activity").

1. In PRISON GANG validation cases PRIOR to August 30, 1999, At least one of the three pieces of evidence Must be A "direct link" to a validated Member. (Madrid, At 1242, n.18b4; see Also, cal. Code Regs. tit 15, Section 3378 (c)(3)(4)

22.

2. RETENTION

ADMINISTRATIVE SEGREGATION CANNOT, BE USED AS A "PRETEXT FOR INDEFINATE COMMITMENT OF AN INMATE". (MADRID, AT 1277-1278, CITING, HEWITT V. HELMS, 459 U.S. 460, 477 n.9, 103 S.Ct. 864, 874 n.9, 74 L.Ed. 2d 675). THUS, COURTS REQUIRE THAT PRISON OFFICIALS CONDUCT SOME SORT OF PERIODIC REVIEW OF THE CONFINEMENT OF PRISONERS IN ADMINISTRATIVE SEGREGATION. (ID. (CITING, TOUSSAINT V. McCARTHY, 801 F.2d 1080, 1101).

AS A RESULT OF COURT INJUNCTIONS AND ORDERS IN TOUSSAINT, ALLEGED PRISON GANG AFFILIATES WERE CONSIDERED FOR RELEASE FROM SEGREGATION ON A YEARLY BASIS.[2] (ID.) HOWEVER, NEW REGULATIONS BECOME OPERATE ON AUGUST 30, 1999 WHICH NOW REQUIRES THAT ALLEGED GANG AFFILIATES BE CONSIDERED FOR SHU RELEASE EVERY SIX (6) YEARS - OR UNTIL THE PRISONER DEBRIEFS, i.e., BECOME AN INFORMANT. ((CAL. CODE OF REGS., tit.15, SECTIONS 3341.5(c)(5) AND 3378.1). THUS, A REAL CONTROVERSY EXISTS REGARDING WHETHER OR NOT SECTIONS 3341.5(c)(5) AND 3378.1 VIOLATE THE TOUSSAINT INJUNCTIONS AND ORDERS PREVIOUSLY MENTIONED.

IN ANY EVENT, DUE PROCESS REQUIRES THAT PRISON OFFICIALS FIRST DESIGNATE ALLEGED GANG AFFILIATES AS BEING "CURRENT ACTIVE", i.e. INVOLVED IN GANG ACTIVITY (CAL. CODE REGS. tit 15, SECTION 3000 "GANG" AND 3023 "GANG ACTIVITY") AND WHETHER PETITIONER IS A THREAT TO SAFETY AND SECURITY (ID. SECTIONS 3335(d) AND 3341.5(c)(3))

3. AFFILIATION VS. CONDUCT

CDC REFERENCED AND INCORPORATES THE PHILOSOPHY AND LANGUAGE CONTAINED IN MUCH OF THE STREET TERRORISM ENFORCEMENT AND PREVENTION ACT (PENAL CODE SEC. 186.22); COMPARE, TITLE 15, CALIFORNIA CODE OF REGULATIONS (CCR) SECTIONS 3000 "GANG" AND 2023 "GANG ACTIVITY"; COG DOES NOT REFERENCE OR INCORPORATE THE RELATED PENAL CODE SEE 186.21 AND THE LEGISLATURES FINDINGS THEREIN ("IT IS NOT THE INTENT OF THIS CHAPTER TO INTERFERE WITH THE EXERCISE OF THE CONSTITUTIONALLY PROTECTED RIGHTS OF FREEDOM OF EXPRESSION OR ASSOCIATION"); SEE ALSO, ANNOTATED PENAL CODE SEC. 186. 22, NOTES OF DECISIONS, NOTE 7 "ACTIVE PARTICIPATION"), SEE ALSO ASSEMBLY CORN. ON PUBLIC SAFETY, ANALYSIS

2. SEE e.g., WRIGHT V. RUSHEN (9th CIR. 1981) 642 F.2d 1129, 1138 (DISCUSSING EARLIER INJUNCTIONS.)

23

of Assembly Bill No 2013 (1987-1988) Reg. Sess.) June 8, 1987, P. 7 [Noting Scales_____ that "Mere association with a group cannot be punished unless there is proof that the defendant knows of and intends to further its illegal aims"]; Id at P.2 ("The bill as written will not apply to the so called casual member. To be held criminally culpable, gang members must have the requisite specific intent and knowledge. AB 2013, In fact Goes beyond the active membership test in Scales by requiring active participation, rather than mere membership.")

Further, state and federal courts have clearly rejected guilt by association and gang membership as evidence that a specific crime was committed, see e.g., N.A.A.C.P. v. Claiborne Hardware Co. (1982) 485 U.S. 886.925 (Rejecting not only guilt "by" association, but also guilt "for" association; characterizing guilt by association as "A Philosophy alien to the traditions of a free society... And the First Amendment itself."); U.S. v. Robal 389 U.S. 258, 264 (Holding unconstitutional law establishing guilt by association alone); Keyishian v. Board of Regents (1967) 385 U.S.589, 607 (Rejecting law resting on "the doctrine of 'guilt by association remains a thoroughly discredited doctrine"); Joint Anti-fascist Refugee Committee v. McGrath (1951) 341 U.S. 123,175 (Douglas, J., concurring )(Rejecting guilt by association as "one of the most odious institutions of history"); America-Arab Anti-Discrimination Committee v. Reno (9th Circuit 1995) 70 f.3d 1045,1063 ("Guilt by association alone violates the First Amendment."); U.S. v. Welfswinkel (1995) 44 f.3d 782,787 ("The prosecution may not prove a defendant's guilt by showing his association with unsavory characters."); U.S. v. Dickens (1985) 775 f.2d 1056, 1058. (same); People v. Perez (1981) 114 Cal. App.3d 470,477 (Evidence of gang membership inadmissible insofar as it does not have any 'tendency' in reason to prove a disputed fact, i.e. the identity of the person who committed the charged offense"); People v. Solo (1984) 157 Cal. App. 3d 694,712-713 ("Membership in an organization does not lead reasonably to any inference as to the conduct of a member on a given occasion"). People v. Gomez (1991) 235 Cal. App. 2d 957, 971 (Penal code sec. 186. 22 "Regulates conduct, not speech or association, and there is no right of association to engage in criminal conduct... One is free to associate with whomever one wishes under the statute, as long as the primary purpose of ass-

24.

ociating oneself with the group is not to commit crime. It is not the association with others about which section 186.22 addresses, but the association with others for the purpose of promoting, furthering or assisting them in the commission of crime"); PEOPLE V. CASTANEDA, (2000) 23 Cal.4th 743, 749 (a person's active participation in a criminal street gang, without more, does not amount to a violation of section 186.22 CA.)).

4. VAGUENESS AND OVERBREADTH

Laws, including prison regulations, must be clear and unambiguous. PEOPLE V. LOPEZ (1998) 66 Cal.App. 4th 615, 630 ("No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statues. All are entitled to be informed as to what the state commands or forbids.' (citation) The operative corollary is that 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law' (citation) ("... Thus, A law that is 'void for vagueness' not only fails to provide adequate notice to those who much observe its strictures, but also "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application '(citation)"); SEE ALSO. RIOS V. LANE (11th Cir 1987) 812 F. 2d 1032, 1038 ("Moreover, where prohibited conduct does not carry with it its own indicia of wrong doing, the need for clearly drawn prison regulations is particularly acute and vague prison regulations prohibiting "gang activity")

II. ADMINISTRATIVE PROCEDURES ACT (APA)

California Penal Code Section 5058 (a), declares in part that:
"The director [of the Department of Corrections] may prescribe and amend rules and regulations for the administration of the prisons... The rules and regulations shall be promulgated and filed pursuant to (The APA)..." (emphasis added) clearly, the APA generally applies to the Department's quasi-legaslative enactment.

25.

Further, the KEY PROVISION of GOVERNMENT CODE SECTION 11342 (g), defines "REGULATIONS" AS: "...EVERY RULE, REGULATION, ORDER, OR STANDARD of GENERAL APPLICATION OR the AMENDMENT, SUPPLEMENT, OR REVISION OF ANY RULE, REGULATION, ORDER, OR STANDARD ADOPTED by ANY STATE AGENCY to IMPLEMENT, INTERPRET, OR MAKE SPECIFIC the law ENFORCED OR ADMINISTERED by IT, OR to GOVERN ITS PROCEDURE..." [EMPHASIS ADDED]

FINALLY, IF the PETITIONER for WRIT of HABEAS CORPUS MAKES A _PRIMA_ _FACIE_ showing, i.e. facts PLEADED with sufficient PARTICULARLY which, IF PROVED AT A HEARING, OR NOT DISPUTED by RESPONDENT, the PETITIONER IS ENTITLED to RELIEF, the COURT should ISSUE AN "ORDER to show CAUSE" (IN RE LE WALLEN (1979) 23 CAL. 3d 190, 194; IN RE HOCHBERG (1970) 2 CAL. 3d 870, 875 n. 4; IN RE WEBBER (1974) 11 CAL. 3d 703; PEOPLE V. ROMERO (1996) 13 CAL. 4th 497)

ON HABEAS CORPUS, the PETITIONER bears two distinct burdens; the burden of PLEADING OR ALLEGING facts ENTITLING him to RELIEF (i.e. MAKING A _PRIMA FACIE_ CASE for ITSELF), And ULTIMATELY, the burden of PROVING the facts UPON which he BASES his claim for RELIEF (IN RE SERNA, (1949) 34 CAL. 2d 300, 304; IN RE LE WALLEN, SUPRA, 23 CAL. 3d at 194; IN RE BOWER (1985) 38 CAL. 3d 865, 872). ONCE PETITIONER HAS MADE A _PRIMA_ _FACIA_ showing..." the burden shifts to the PEOPLE to REBUT the PRESUMPTION." (BOWER SUPRA, 38 CAL. 3d at 872-873; SEE ALSO, IN RE NESPER (1990) 217 CAL. APP. 3d 872-874).

## CONCLUSION

"[T]hough his RIGHTS MAY BE DIMINISHED by the NEEDS AND EXIGENCIES of the INSTITUTIONAL ENVIRONMENT, A PRISONER IS NOT WHOLLY STRIPPED of CONSTITUTIONAL PROTECTIONS when he IS IMPRISONED for CRIME. THERE IS NO, IRON CURTAIN drawn between the CONSTITUTION AND the PRISONS OF this COUNTRY". (WOLFF V. MCDONNELL (1974) 418 U.S. 539, 555-556. 94 S.ct. 2963, 41 L.Ed. 2d 935).

ACCORDINGLY, PRISON OFFICIALS MUST COMPLY with the CONSTITUTION, RELEVANT LAWS AND THEIR OWN REGULATIONS.

RESPECTFULLY SUBMITTED.

X Dated: 7·28·08

DAVID VELASQUEZ (IN PROPER)

26.

# EXHIBIT "A"

ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
DC 114-D (Rev 10/98)

DISTRIBUTION:
WHITE - CENTRAL FILE          CANARY - --WARDEN
BLUE - INMATE ~(2ND COPY)     PINK - HEALTH CARE --MGR
GREEN - ASU                   GOLDENROD - INMATE ~(1ST COPY)

| INMATE'S NAME: DAVID VELASQUEZ | CDC NUMBER: D-75915 |
|---|---|

## REASON(S) FOR PLACEMENT

☒ PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS
☒ JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY
☐ ENDANGERS INSTITUTION SECURITY        ☐ UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:

On May 5, 2006, you are being placed into Administrative Segregation (Ad-Seg) pending completion of an investigation into your possible involvement with the Mexican Mafia Prison Gang (EME). CAL staff in conjunction with Office of Correctional Safety (OCS) staff are conducting a review of information and have/or will submit a "validation package" for review. Therefore you are deemed a threat to the safety and security of the Institution and will be rehoused in Ad-Seg pending the completion of the validation process.

As a result of this placement, your credit earning, Custody Level, Privilege Group and Visiting Status are subject to change. No MHSDS level of care noted.

☐ CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL)    ☐ IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE:    / /

| DATE OF ASU PLACEMENT 5/5/06 | SEGREGATION AUTHORITY'S PRINTED NAME G. STRATTON | | SIGNATURE G. Stratton  Lt | | TITLE LIEUTENANT |
|---|---|---|---|---|---|
| DATE NOTICE SERVED 5/5/06 | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE J. PAGAZA | | SIGNATURE | STAFF'S TITLE CORR. OFFICER |

☐ INMATE REFUSED TO SIGN    INMATE SIGNATURE    CDC NUMBER

## ADMINISTRATIVE REVIEW (Part B)
The following to be completed during the initial administrative review by Captain or higher by the first working day following placement

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT'S NAME | TITLE | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |

**IS THIS INMATE:**

| | | | |
|---|---|---|---|
| LITERATE? | ☒ YES ☐ NO | EVIDENCE COLLECTION BY ~IE UNNECESSARY | ☒ YES ☐ NO |
| FLUENT IN ENGLISH? | ☒ YES ☐ NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | ☒ YES ☐ NO |
| ABLE TO COMPREHEND ISSUES? | ☒ YES ☐ | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | ☐ YES ☒ NO |
| | | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | ☐ YES |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | ☒ YES ☐ NO | | |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | ☐ YES | ☐ NOT ASSIGNED | Any "NO" may require ~IE assignment |
| Any "NO" requires SA assignment | | | |
| ☐ NOT ASSIGNED | | | |

### INMATE WAIVERS

☐ INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER    ☐ INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME
☐ NO WITNESSES REQUIRED BY INMATE

| INMATE SIGNATURE | DATE  / / |
|---|---|

### WITNESSES REQUIRED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |

**DECISION:**    ☐ RELEASE TO UNIT/FACILITY _____    ☐ RETAIN PENDING ICC REVIEW    ☐ DOUBLE CELL    ☐ SINGLE CELL PENDING
REASON FOR DECISION:

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | DATE OF REVIEW |

# EXHIBIT "B"

NAME: **Velasquez, David**        CDC: **D-75915**        Facility **C**        CDC 128-B (REV. 4/74)

On Thursday, April 27, 2006, while searching the property of Inmate **Velasquez, David**, D-75915 aka Spider from Pomona, I discovered several materials located inside a letter addressed to Inmate **Velasquez.** In reviewing the content, I discovered the symbol of two (2) lines three (3) dots on the back of the form. The symbol specifically showed two (2) horizontal lines one above the other and three (3) dots in a horizontal line above the two (2) lines. Through my years of experience and training as gang investigator, I know this symbol is called the **"Mactlactiome"**. The **"Mactlactiome"** is the mayan symbol for the number thirteen. The aforementioned symbol is used by the Southern Hispanic Inmates as a symbol to show they are true solider who are loyal to the Mexican Mafia (EME) Prison Gang. This symbol is used to represent the thirteen letter of the alphabet or "M" which is a known symbol of the EME, and has been adopted and used by validated members and associates of the EME.

This confidential chrono (Association) should be used as one (1) source towards the validation of **Velasquez** as an associate of the **Mexican Mafia (EME)** prison gang. It is recommended that Inmate **Velasquez's** behavior be monitored and documented whenever gang association or activity is present.

E. Duarte
Assistant Institutional Gang Investigator
Calipatria State Prison

(Calipatria State Prison)
DATE: 06/20/2006        **Gang Activity (Symbols)**                CDC 128-B

T&H= O-VOCE Y SALUDOS A



# EXHIBIT "C"

STATE OF CALIFORNIA                                                              DEPARTMENT OF CORRECTIONS AND REHABILIATION
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: **D-75915**                          INMATE NAME: **Velasquez, David**

1)    Use of Confidential Information.

Information received from a confidential source(s) has been considered in the: **PRISON GANG VALIDATION**

a)      CDC 115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b)      CDC-114-D, Order and Hearing for Placement in Segregated housing dated:.

2)    Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the Institution.

This information is considered reliable because:

a) ☐ This source has previously provided confidential information which has proven to be true.

b) ☐ This source participated in and successfully completed a Polygraph Examination.

c) ☐ More than one source independently provided the same information.

d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☐ Part of the information provided by the source(s) has already proven to be true.

f) ☒ Other: EME Mail Drop.

3)    Disclosure of information received: **Inmate Velasquez was identified as possessing and maintaining an address where a third party can assist him in forwarding gang communications. The address is used by Mexican Mafia Members/Associates.**

4)    Type and current location of documentation: **Confidential Memorandum, dated 6-20-06, located in Velasquez's central file, confidential section.**

_____                        _____
STAFF SIGNATURE, TITLE                                          DATE DISCLOSED

DISTIBUTION: WHITE – Central File; GREEN – Inmate; YELLOW – Institution Use

EXHIBIT "D"

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS AND REHABILIATION
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

NOT ME

INMATE NUMBER: ~~D~~ D 759 15          INMATE NAME: ~~████████~~ Velasquez, David

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the: **PRISON GANG VALIDATION**

   a)    CDC 115, Disciplinary Report dated ____ submitted by

   _____
                          STAFF NAME, TITLE

   b)    CDC-114-D, Order and Hearing for Placement in Segregated housing dated:.

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the Institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph Examination.

   c) ☐ More than one source independently provided the same information.

   d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☐ Part of the information provided by the source(s) has already proven to be true.

   f) ☒ Other: **Written correspondence.**

3) Disclosure of information received:    **Inmate Velasquez was identified as possessing written material regarding Mexican Mafia (EME) Prison Gang activity, by using written correspondence.**

4) Type and current location of documentation: **Confidential Memorandum, dated 7-10-04, located in Velasquez's central file, confidential section.**

_____          7-17-06
STAFF SIGNATURE, TITLE                    DATE DISCLOSED

DISTIBUTION: WHITE – Central File; GREEN – Inmate; YELLOW – Institution Use

RECEIVED CAL APPEALS    SEP 2 5 2006
STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CAL    S 0602444

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: **H-25244**    INMATE NAME: **CHAVEZ, EDDIE**

1)    Use of Confidential Information.

Information received from a confidential source(s) has been considered in the: **PRISON GANG VALIDATION**

a)    CDC 115, Disciplinary Report dated ____ submitted by

_____
STAFF NAME, TITLE

b)    CDC-114-D, Order and Hearing for Placement in Segregated housing dated: .

2)    Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the Institution.

This information is considered reliable because:

a)  ☐  This source has previously provided confidential information which has proven to be true.

b)  ☐  This source participated in and successfully completed a Polygraph Examination.

c)  ☐  More than one source independently provided the same information.

d)  ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

e)  ☐  Part of the information provided by the source(s) has already proven to be true.

f)  ☒  Other: **Written correspondence.**

3)    Disclosure of information received:    **Inmate Velasquez was identified as possessing written material regarding Mexican Mafia (EME) Prison Gang activity, by using written correspondence.**

4)    Type and current location of documentation: **Confidential Memorandum, dated 7-10-04, located in Velasquez's central file, confidential section.**

_____    **7/12/06**
STAFF SIGNATURE, TITLE    DATE DISCLOSED

DISTIBUTION: WHITE – Central File; GREEN – Inmate; YELLOW – Institution Use

Michele Velasquez
P.O. Box 8384
La Verne Ca 91750

Mr David Velasquez
Q 75915 ASU. 1C
P.O. Box 5002    H-
Calipatria, Ca 92233

baby giel x I could call me baby giel-i I call you baby boy I'm singing to you!

" POEM "

AS YOU KNOW, WE ARE NOT A LAW FOR ALL, WE
ARE A LAW FOR US AND OUR KIND... 
THOSE WHO STAND WITH US MUST BE OF STRONG
BONES AND LIGHT FEET. WE MUST BE READY FOR WAR
AS WELL AS OUR FESTIVAL, EAGER FOR WAR!
THE BEST BELONGS TO US SUREÑOS. THOSE PEOPLE
WHO don't GIVE IT, WE TAKE IT. THE STRONGEST
THOUGHTS THE PUREST SKIES. WE ARE
ZTEC WARRIORS PURO
HUITZNAHUACANI    C/n

# EXHIBIT "E"

RECEIVED CAL APPEALS  SEP 2 5 2006
CAL  S 0602444

NAME and NUMBER     **VELASQUEZ, David**        **D75915**      CALIPATRIA   CDC 128-B (4/74)

On Thursday July 13, 2006, an investigation was completed by the Office of Correctional Safety (OCS) Gang Intelligence Operations Gang Unit and Calipatria Institutional Gang Investigation Unit into the gang status of Inmate VELASQUEZ, D75915, AKA: "Spider" or "Mouse" from the 12th Street Sharkys disruptive group as an associate of the Mexican Mafia (EME) prison gang. After a thorough investigation there was sufficient evidence discovered to show VELASQUEZ associating with active EME members and associates as well as possessed materials indicative of EME association.

The following was discovered as a result of the investigation:

1.) **Source Document:** Confidential CDCR 128B dated June 20, 2006, authored by Correctional Officer E. Duarte. This document details the discovery of the phone/address book of VELASQUEZ which contained a known mail drop address for communicating with EME members/associates. VELASQUEZ maintained this address where a third party can assist him in forwarding gang communications without the detection of staff.

2.) **Source Document:** Confidential Memorandum dated July 10, 2004, authored by Correctional Officer E. Duarte. This document identified VELASQUEZ as possessing written material directly related to EME prison gang activities.

3.) **Source Document:** CDC 128B dated June 20, 2006, authored by Correctional Officer E. Duarte. This document details the discovery of several materials located inside a letter addressed to VELASQUEZ. In reviewing the contents the contents contained the symbol identified as the "Mactlactlomel", which signifies the number "13". The number "13" corresponds to the letter "M" which in Spanish is pronounced EME. In the prison culture the "13" and the letter "M" directly correspond to the EME prison gang. Well known EME members use this symbol to identify themselves with the EME.

Based on the information contained in the aforementioned documents, VELASQUEZ has demonstrated he is an active associate of the EME prison gang and his status should be updated to that of validated Associate of the EME prison gang.

cc:    C-File
       Inmate
       LEIU

**M. Tamayo**
Assistant Institutional Gang Investigator
Investigative Services Unit

Date:    7/17/2006                    **GANG INFORMATION**              **Calipatria State Prison**

EXHIBIT "F"

RECEIVED CAL APPEALS   SEP 2 5 2006
NAME and NUMBER    **VELASQUEZ, David**    D75915    CAL   S 0 6 0 2 4 4 4
CALIPATRIA   CDC 128-B (4/74)

On Thursday July 13, 2006, an investigation was completed by the Office of Correctional Safety (OCS) Gang Intelligence Operations Gang Unit and Calipatria Institutional Gang Investigation Unit into the gang status of Inmate VELASQUEZ, D75915, AKA: "Spider" or "Mouse" from the 12th Street Sharkys disruptive group as an associate of the Mexican Mafia (EME) prison gang. After a thorough investigation there was sufficient evidence discovered to show VELASQUEZ associating with active EME members and associates as well as possessed materials indicative of EME association.

The following was discovered as a result of the investigation:

1.) **Source Document:** Confidential CDCR 128B dated June 20, 2006, authored by Correctional Officer E. Duarte. This document details the discovery of the phone/address book of VELASQUEZ which contained a known mail drop address for communicating with EME members/associates. VELASQUEZ maintained this address where a third party can assist him in forwarding gang communications without the detection of staff.

2.) **Source Document:** Confidential Memorandum dated July 10, 2004, authored by Correctional Officer E. Duarte. This document identified VELASQUEZ as possessing written material directly related to EME prison gang activities.

3.) **Source Document:** CDC 128B dated June 20, 2006, authored by Correctional Officer E. Duarte. This document details the discovery of several materials located inside a letter addressed to VELASQUEZ. In reviewing the contents the contents contained the symbol identified as the "Mactlactlomel", which signifies the number "13". The number "13" corresponds to the letter "M" which in Spanish is pronounced EME. In the prison culture the "13" and the letter "M" directly correspond to the EME prison gang. Well known EME members use this symbol to identify themselves with the EME.

## Disclosure and Notification

On Wednesday July 12, 2006, Assistant Institutional Gang Investigator E. Duarte disclosed all information used in the validation to VELASQUEZ. The copies of all non-confidential source documents were issued to VELASQUEZ and confidential information was disclosed via CDC 1030, Confidential Disclosure Form. VELASQUEZ was further given notice that an interview regarding his validation, as an associate of the EME, would be held not less than 24 hours from the time of this notification.

A review of VELASQUEZ'S Central File revealed his educational level G.P.L. to be 3.3. VELASQUEZ did not request staff assistance and stated he understood the proceedings of the gang review. Staff assistance was therefore not assigned by the IGI.

## Interview

On Monday July 17, 2006, I made contact with VELASQUEZ in his housing unit to conduct a pre-validation interview. I informed VELASQUEZ that this was an opportunity to dispute information used in the validation. VELASQUEZ stated the following:

On Confidential Memorandum dated July 10, 2006, VELASQUEZ stated that the 1030 that was issued to him on July 12, 2006, had the wrong name and CDC number on it. I explained to VELASQUEZ that I would correct the 1030 form by putting the correct name and CDC number on it. VELASQUEZ agreed and accepted the original 1030 that was issued to him as I corrected it in front of him. Security & Investigation Officer L. Hernandez witnessed me as I corrected the 1030 in front of VELASQUEZ. I explained to VELASQUEZ that I would come back in 24 hours to re-interview him on this issue but VELASQUEZ declined and requested we go on with the interview.

RECEIVED CAL APPEALS   SEP 2 5 2006                    CAL      S 0602444

VELASQUEZ also handed to me a written statement (see attachments) that he wants attached to his validation package.

That was the conclusion of the interview.

## Conclusion
The above information clearly indicates that VELASQUEZ is associating with active EME members and associates.   A package is being submitted to the Office of Correctional Safety requesting VELASQUEZ be validated as an active associate of the EME.


cc:   C-File
       Inmate
       LEIU

                                         M. TAMAYO
                                         Assistant Institutional Gang Investigator
                                         Investigative Services Unit


Date:    7/17/06        CSP-CALIPATRIA                    **GENERAL CHRONO**
                        (GANG STATUS UPDATE)

# EXHIBIT "G"

PAGE Filed on APPEALS SEP 2 5 2006 INMATE VALIDATION STATEMENT 7-13-06
7:01 Am
S 0602444

I, DAVID VELASQUEZ D-75915 SUBMIT THIS VALIDATION STATEMENT FOR CONSIDERATION BY THE I.G. I LEVEL CLASSIFICATION COMMITTEES AND STAFF REVIEWER I REQUEST THAT THIS STATEMENT BE INCLUDED IN THE VALIDATION PACKAGE CONCERNING me; ~~BUT I REQUEST~~ ~~THAT THIS STATEMENT BE INCLUDED IN THE VALIDATION~~ ~~PACKAGE CONCERNING me.~~ I ALSO REQUEST THAT A COPY be INCLUDED IN MY C.D.C. C-FILE FOR REVIEW BY THE CLASSIFICATION COMMITTEE CONSIDERING MY PLACEMENT IN THE SHU.

WITH REGARDS TO THE VALIDATION BEING CONSIDERED IN THE VALIDATION PACKAGE I RESPOND AS FOLLOWS: ITEM #1 C.D.C. 128 G-B DATED 6-20-06 THIS IS NOT TRUE. I DO NOT USE THESE SYMBOLS TO PROMOTE ANY KIND OF GANG ACTIVITY, I DID NOT EVEN KNOW THIS COULD BE USED AS GANG ASSOCIATION. I WRITE POEMS AND COLECT THEM AS WELL, AND I ALSO DRAW, AND TO "ME" THESE SYMBOLS ARE JUST PART OF MEXICAN HISTORY, NOTHING MORE.

ITEM #2 CONFIDENTIAL MEMO DATED 6-20-06 THIS IS NOT TRUE. I'M NOT EVEN SURE WHAT ADDRESS THE E.S.I. ARE TALKING ABOUT, I DO NOT COMMUNICATE WITH ANY MEXICAN MAFIA MEMBERS/ASSOCIATES. AT THE TIME I WAS ALLEGEDLY IDENTIFIED I WAS ALREADY IN AD-Seg. THERES NO SUCH ADDRESS.

ITEM #3 CONFIDENTIAL MEMO DATED 7-10-04 THIS

PAGE-2 OF INMATE VALIDATION STATEMENT

RECEIVED CAL APPEALS  SEP 2 5 2006

S 0602444

ACTIVITIES. THIS IS A MISTAKE THE DISCLOSURE FORM DOES NOT EVEN HAVE MY NAME ON IT. IT HAS SOMEONE ELSES NAME EDDIE (CHAVEZ H-25244) I AM NOT AN ACTIVE PRISON GANG ASSOCIATE. I AM NOT A THREAT TO THE SAFETY OF OTHERS OR INSTITUTION SECURITY.

THE ITEMS BEING USED AGAINST ME ARE INSUFFICIENT TO VALIDATE ME AS AN ASSOCIATE OF THE "EME" IM SIMPLY TRYING TO DO MY TIME & GO HOME, ~~~~~~~~ I HAVE DONE NOTHING WRONG.

RespectFULLY
DAVID VELASQUEZ
7-13-06

EXHIBIT "H"

CAL    § 0602444  cx/ 

RECEIVED CAL APPEALS  SEP 2 5 200∙
STATE OF CALIFORNIA
CDC 128-B-2 (5/95)

DEPARTMENT OF CORRECTIONS

---

INMATE'S NAME:  David VELASQUEZ                                    CDC NUMBER:  D75915

---

On July 26, 2006, a gang validation package submitted by Institution Gang Investigator Stratton at CAL. The following documents were submitted for review regarding subject's validation status:

TOTAL NUMBER OF ITEMS SUBMITTED FOR REVIEW: (3)

Item (1) Confidential CDC 128B dated 6/20/06 (Association/Direct Link)

Item (2) Confidential Memorandum dated 7/10/06 (Communications)

Item (3) CDC 128B dated 6/20/06 (Symbols)

TOTAL NUMBER OF ITEMS WHICH MEET VALIDATION REQUIREMENTS: (3)

The following items **do not meet** the validation requirements and were/shall not be used as a basis for validation:

TOTAL NUMBER OF ITEMS WHICH DO NOT MEET VALIDATION REQUIREMENTS: (0)

---

ACTION OF REVIEWER

Pursuant to the validation requirements established in 15 CCR Section 3378, David VELASQUEZ is:

☒ **VALIDATED**      ☐ **REJECTED**

as an **associate** of the **Mexican Mafia** prison gang.

SIGNATURE                 SIGNATURE                 SIGNATURE
CHAIRPERSON               ~~MEMBER~~                MEMBER

Printed name              Everett W. Fischer        D.L. Speer
                          Printed name              Printed name

DATE:  8/23/06

GANG VALIDATION/REJECTION REVIEW
GENERAL CHRONO
LEIU/SSU

DISTRIBUTION:
Original - Central File
Copy - Classification & Parole Representative/Parole Administrator I
Copy - Institutional Gang Investigator/Region Gang Coordinator
Copy - Law Enforcement Liaison Unit
Copy - Inmate/Parolee

**ACTIVE/INACTIVE REVIEW**

**JUN 2 0 2012**

**ELIGIBILITY DATE**

# EXHIBIT "I"

CA S0602444

(CDC 114-D (Rev 10/98)    ........ UNIT PLACEMENT NOTICE

RECEIVED, CAL APPEALS 25 2006

CDC Forgot to put X and ~

DISTRIBUTION:
WHITE - CENTRAL FILE          CANARY - ~WARDEN
BLUE - INMATE ~(2ND COPY)     PINK - HEALTH CARE -MGR
GREEN - ASU                   GOLDENROD - INMATE ~(IST COPY)

| INMATE'S NAME: | CDC NUMBER: |
|---|---|
| DAVID VELASQUEZ | D-75915 |

### REASON(S) FOR PLACEMENT (PART A)

[X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS
[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY
[X] ENDANGERS INSTITUTION SECURITY    [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:    VELASQUEZ D 75915 VC

On July 26, 2006, Calipatria State Prison Institutional Gang Investigations (IGI) received information that the Prison Gang Validation package previously submitted on you (I/M Castellon K-82777) has been reviewed and accepted. On August 23, 2006, a CDC 128 B-2 was prepared which validates you as an associate of the Mexican Mafia Prison Gang. Based on the aforementioned, your continued presence is deemed a threat to the safety and security of the Institution, its Staff and Inmates. Therefore, you will remain in Administration Segregation pending Administrative review and transfer to a Security Housing Unit (SHU). As a result your continued placment in Ad/Seg, your Custody Level, Privilege Group, Work Status and Visiting Status will remain the same. Inmate Castellon is NOT a participant in the Mental Health Delivery System (MHSDS).

VELASQUEZ VC    —AGAIN "I" SAY! NOT ME :

[ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL)    [ ] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE:    /    /

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | | TITLE |
|---|---|---|---|---|
| | G. STRATTON | | | LIEUTENANT |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
|---|---|---|---|---|
| 8/1/06 | 1402 | J. CRABTREE | | CORR. OFFICER |

[ ] INMATE REFUSED TO SIGN    INMATE SIGNATURE    CDC NUMBER

### ADMINISTRATIVE REVIEW (PART B)
The following to be completed during the initial administrative review by Captain or higher by the first working day following placement.

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT'S NAME | TITLE | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |
| None | | None | |

IS THIS INMATE:

| | YES | NO | | YES | NO |
|---|---|---|---|---|---|
| LITERATE? | [ ] | [ ] | EVIDENCE COLLECTION BY ~IE UNNECESSARY | [ ] | [ ] |
| FLUENT IN ENGLISH? | [ ] | [ ] | DECLINED ANY INVESTIGATIVE EMPLOYEE | [ ] | [ ] |
| ABLE TO COMPREHEND ISSUES? | [ ] | [ ] | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | [ ] | [ ] |
| | | | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | [ ] | |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | [ ] | [ ] | | | |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [ ] YES | | [ ] NOT ASSIGNED | | |

Any "NO" requires SA assignment

Any "NO" may require ~IE assignment

[ ] NOT ASSIGNED

### INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER    [X] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

| [X] NO WITNESSES REQUIRED BY INMATE | INMATE SIGNATURE | DATE |
|---|---|---|
| | N/A | |

### WITNESSES REQUIRED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| N/A | | N/A | |
| | | | |

| DECISION: | [ ] RELEASE TO UNIT/FACILITY ____ | [X] RETAIN PENDING ICC REVIEW | [ ] DOUBLE CELL | [ ] SINGLE CELL PENDING |
|---|---|---|---|---|

REASON FOR DECISION:    Retain ASU pending ICC review for appropriate housing

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| G. Iturburua | FC | 9/5/06 | 1105 | |

| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) |
|---|---|

STATE OF CALIFORNIA    RECEIVED CAL APPEALS  SEP 2 6 2006

CDC NO#: D75995  APPEALS  DEPT  NAME: VELASQUEZ
PS: 108  LEVEL: IV    MEPD: 02/07/20
WG/PG: D1D EFF. 05/05/06    NEXT ANNUAL: 02/07

CAL
HOUSING:  ASU 123U
CUSTODY:  MAX

DEPARTMENT OF CORRECTIONS & REHABILITATION
CDC 128G (Rev. 12/91)

**ACTION:**  SUBSEQUENT INITIAL REVIEW: RETAIN ASU PENDING CSR REVIEW & TX TO INDETERMINATE SHU PLACEMENT / REAFFIRM MAX CUSTODY AND WG/PG D1D EFFECTIVE 05/05/06 / **REFER TO CSR RX TX PBSP-SHU/CCI-SHU FOR INDETERMINATE SHU PLACEMENT** / DOUBLE CELL APPROVED / CLEAR FOR YARD WITH CELLMATE / NO MHSDS, MDO, DDP, DPP ISSUES NOTED / RESCHEDULE ICC ON 11/30/06

Inmate Velasquez was screened in person by ICC for the purpose of a Subsequent Initial Review. Inmate was initially placed in Administrative Segregation (AD SEG) on 05/05/06 pending investigation into gang status. CAL IGI and OCS conducted an investigation into inmate's involvement with the Mexican Mafia (EME) Prison Gang referenced in Confidential CDC 128-B dated 07/17/06 authored by C/O Tamayo. Committee notes on 08/23/06 inmate was validated as an associate of the Mexican Mafia (EME) Prison Gang per 128-B2 dated 08/23/06. The 114D interview was conducted on 09/01/06 by G. Chavarria, Facility Captain. The 114D hearing was conducted on 09/07/06 by ICC. Time constraints were meet and no due process violations noted. Committee elects to retain inmate in ASU and **refers this case to the CSR requesting transfer to PBSP-SHU/CCI-SHU for Indeterminate SHU Placement.** Retain MAX Custody and WG/PG D1D effective 05/05/06. Committee acts to reaffirm yard with cellmate. Inmate's case was reviewed for double cell housing and no pervasive pattern of in cell violence is noted. Inmate is assigned to double cell housing with no special restrictions. Inmate's reading GPL is 7.0. Inmate Velasquez was endorsed to CAL on 12/14/98. His next BPT is scheduled for 01/19. Case factors remain the same as noted in CDC 128-G dated 02/05/02. TB Code of 22 is noted in CDC 128-C dated 05/03/06. Inmate does not meet MDO, DDP or DPP criteria. Inmate Velasquez is not a participant in the MHSDS. Inmate was advised he would be rescheduled for ICC on 11/30/06. Inmate actively participated and stated he understood the actions of Committee. Inmate was advised of his right to appeal and that this Committee acts as his first level of appeal. His next Annual Review is scheduled for 02/07. Inmate stated he had no questions or comments to address to the Committee. Inmate stated he disagrees with the gang validation and will appeal. There are no other pertinent case factors noted. (nbn)

*Given to Fm on 9/22/06. Thru—— CC I.*

L. E. SCRIBNER, Warden    9/26/06  Chairperson    C. CAFFARELLA, AW (A)    Recorder

**Committee Members:** G. Chavarria, FC; J. Devenberg, CCII (A); J. Anaya, CCII (A); J. Bellinger, Ph.D.
cc:   Counselor, Inmate
**Date: 09/07/2006**    **CLASSIFICATION:** ICC AD/SEG    **INST:** CAL-IV

# EXHIBIT "J"

RECEIVED CAL APPEALS  SEP 2 5 2006

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

ATT.:
LAW LIBRARY MY 602
IS THE ONLY (2) PAGES THAT
NEED'S TO BE COPIED FRONT
AND BACK SIDE THANK YOU

You may appeal any policy, action committee actions, and classificat member, who will sign your form documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

u. With the exception of Serious CDC 115s, classification lly seek relief through discussion with the appropriate staff sfied, you may send your appeal with all the supporting

Log No. **S 0602444**    Category **6**
1. _____
2. _____

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| VELASQUEZ, DAVID | D-75915 | | ASU #123 |

A. Describe Problem: IN RE: CAL DATE ON 6-20-06 ADDRESS FOUND IN PROPERTY. I HAVE NO KNOWLEDGE OF THE CLAIMS MADE BY I.G.I. I HAVE NO CONTROL OVER WHO WRITES TO THIS SAID ADDRESS. THE RELEVANT QUESTIONS ARE: HAS I.G.I. PRESENTED ANY EVIDENCE THAT I WAS INFACT COMMUNICATING WITH PRISONGANG MEMBERS AND/OR ASSOCIATES? HAS I.G.I. PRESENTED ANY EVIDENCE THAT I COMMUNICATED WITH SAID ADDRESS AT ALL? THE ANSWER IS NO. THE I.G.I. HAS ACCUSED ME OF BEING AN ASSOCIATE, I.E.: HAS FAILED TO DEMONSTRATE ANYTHING THAT REMOTELY CONSTITUTED AS GANG ACTIVITY AS DEFINED IN C.C.R TITLE (15) 3023. THE MERE POSSESSION OF SAID ADDRESS CAN

If you need more space, attach one additional sheet.

B. Action Requested: BASED ON THE ABOVE INFORMATION. APPELLANT FINDS ALL THE "SOME/WHAT" EVIDENCE SUBMITTED BY CALIPATRIA I.G.I. STAFF IS INCONSISTENT TO A "THOROUGH" INVESTIGATION. THE INVESTIGATION IS REQUIRED TO BE THOROUGH THOROUGH AND PROFESSIONAL(I.G.I. DID NEITHER) THIS INVESTIGATION WAS DONE IN HASTE AND

Inmate/Parolee Signature: _David Velasquez_    Date Submitted: 9-20-06

C. INFORMAL LEVEL (Date Received: _____)

Staff Response: _____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

CAL  **S 0602444**

RECEIVED CAL. APPEALS SEP 2 6 2006

PART - A
OF 6

9-2006

CAL

S 0602444

NOT BE CHARACTERIZED AS FITTING THE RELEVANT STATUTORY SOURCE
CRITERIA OF C.C.R TITTLE 15E. 3378 (c)(8)(c) WHICH DEFINES PROOF
OF GANG IDENTIFICATION THROUGH "WRITTEN MATERIAL" AND C.C.R. TITTLE.
15. 3378 (c)(8)(L) WHICH DEFINES "COMMUNICATIONS" UNDER I.G.I.'S
FLAWED APPROACH, MERE POSSESION OF THIS SAID ADDRESS IS CON-
SIDERED EVIDENCE OF GANG ASSOCIATION AND ACTIVITY. I.G.I FAILS
TO ADHERE TO C.C.R TITTLE. 15 3378 (c)(8)(c) & (L), WHICH REQUIRES
THAT EVIDENCE OF GANG ASSOCIATION ACTIVITY BE DEMONSTRATED
THROUGH COMMUNICATIONS WHICH DISCUSS "GANG ACTIVITY," ANY EVIDENCE
MUST BE SUBSTANTIATED AND NOT BASE ON ASSUMPTION, SPECULATION,
SURMISE, CONJECTURE OR "IMAGINATION", TO BE SUFFICIENT EVIDENCE
MUST BE SUBSTANTIAL, AND EVIDENCE IS SUBSTANTIAL ONLY IF IT
REASONABLY INSPIRES CONFIDENCE AND IS OF SOLID VALUE. BY
DEFINITION SUBSTANTIAL EVIDENCE REQUIRES "EVIDENCE" AND NOT
MERE SPECULATION. SEE PEO VS CLUFF 105 CAL RPTR. 2d 80
(CAL APP 1ST DIST. 2001.) AND SOURCE 2.) DOCUMENT: CONFIDENTIAL
MEMORANDUM DATED JULY 10, 2006 AUTHORED BY CORRECTIONAL OFFICER
E. DUARTE IS CLEARLY A MIX UP. BECAUSE I NEVER HAD ANY WRITTEN
MATERIAL IN MY PROPERTY. I DO DRAWINGS AND WRITE POEMS. I
BELIEVE THIS IS A RUSH TO VALIDATE A LARGE NUMBER OF MEXICAN
AMERICANS IS A SWEEP-STYLE MOTION DUE TO THE RECENT VIOLENCE
HERE AT CAL. LOOK AT MY VALIDATION PACKAGE DATED 7.12.06
(SEE ATT.) IT STATE ANOTHER INMATES NAME # ONE: EDDIE CHAVEZ
H-25244. ALSO SEE ATT: C.D.C. 114 DATED JULY 26, 2006
IT HAS YET ANOTHER INMATE'S NAME ON IT. A ONE CASTELLON
K-52779. DIDN'T HIS SUPERVISORS CHECK IT BEFORE HE SIGNED IT
WITH IT? DIDN'T C/O E-DUARTE READ IT FIRST. I STRONGLY

EXHIBIT.J.a

FOR REVIEW OF 2nd LEVEL RESPONCE OF VALIDATION. 11/17/06

CM    S 0602944

MY NAME IS DAVID VELASQUEZ, D-75915, AND I AM
WRITING IN MY BEHALF OF "said" VALIDATION RECENTLY SENT
TO the 2nd LEVEL REVIEW TO I.S.U. FOR A RESPONCE.
ON: 7-17-06 M. TAMAYO ISU. CAL SENT YOU/E.I.U. A GANG
STATUS UPDATE. HE REQUESTED I BE VALIDATED, AND ON:
9.1.06 I WAS SERVED MY FINAL VALIDATION PAPERS STATE-
ING, I AM NOW A VALIDATED "EME" ASSOCIATE. I
REQUEST YOU NOT VALIDATE ME BECAUSE THE EVIDENCE
IS TRANSPARENTLY FALSE "IF YOU NOTICED" ON THE 128-B(3)
ALL! OF THE SAID EVIDENCE WAS DISCOVERED AFTER I WAS
ALREADY IN "AD SEG" FOR A MONTH AND 2 WEEKS. MY C-FILE
HOW-EVER HAS NOTHING TO SUPPORT THESE ACCUSATIONS. AS STATED
IN MY APPEAL AND LETTER TO I.G.C. I "DRAW" AND I
WRITE POEMS. BOTH DEALING WITH THE CURRENT CULTURE AND
HISTORY OF THE MEXICAN IN THE AMERICAS, & (SOUTHERN CALIFORNIA)
I'VE BEEN IN AND OUT OF THE SYSTEM SINCE "1986" AND NEVER
CAME CLOSE TO EVEN BEING AN ASSOCIATE; LET-ALONE VALIDATED.
I STRONGLY BELEIVE THIS IS A "SWEEP" AND (THREE (3 ERRORS) SAY
THEY STARTED WITH THE WRONG MAN, BUT "MADE" ME THE RIGHT
MAN. THIS IS IN VIOLATION OF MY CONSTITUTIONAL RIGHTS. THE FEW
THAT COVER ME, AS WELL AS THE D.O.M. I CAN ONLY ASK THAT YOU
LOOK CAREFULLY AT MY FILE, AND NOT JUDGE ME ON A MISTAKE AND
FABRICATED INFORMATION. again: I SAY I DRAW AND WRITE POEMS
THAT REFLECT MY CULTURE THE GOOD AND THE BAD. IF I S.U. IS
USING A POEM WRITTEN BY SOME-ONE ELSE, OR ME AS
EVIDENCE TO SAY "VALIDATE HIM!," THEN YOUR VALIDATING
ON BEING MEXICAN, NOT BECAUSE IVE A LONG RECORD OF
ASSOCIATED ACTIVITY, OR A TATTOO THAT CLAIMS "EME,"
BUT ON BEING MEXICAN IN SOUTHERN CALIFORNIA. THIS IS
"RACISM" AND DISRESPECTFUL. THIS IS ALSO ANOTHER ATTEMPT
BY C.D.C. TO DISCOURAGE PRIDE IN ONE'S HERITAGE. THIS

MEXICAN HERITAGE WITH GANG ACTIVITY, TO DISCOURAGE
EDUCATION IN ONE'S CULTURE AND TO BE PUNISHED FOR
HAVING PRIDE IN WHO YOU ARE, AND WHERE YOU COME
FROM IS RACISM, AND THIS IS ANOTHER REASON WHY I
STRONGLY BELIEVE THIS VALIDATION WAS DONE IN HASTE,
AND IS A BIG MISTAKE. I REQUEST I BE RELEASED
TO GENERAL POPULATION WITHOUT FURTHER ADO. AND
FURTHER-MORE, (IT IS IN VIOLATION OF TITLE 15, 3022
EQUALITY OF INMATES, AND SEE 3001) 3004, RIGHTS AND
RESPECTS OF OTHERS, TO BE TREATED RESPECTFULLY AND
"IMPARTIALLY" IT IS ALSO UNCONSTITUTIONAL... AND I.G.I.
CONTINUES TO USE ARTWORK OR TATTOOS DEPICTING SYMBOLS;
SYMBOLS WHICH C.D.C. CLAIMS SHOW AN ALLEGIANCE TO GANGS.
FOR EXAMPLE THE AZTEC NUMBERS 13 AND 14, WHICH ARE
REPRESENTED BY THE SYMBOLS. ⋯ AND ⋯⋯, RESPECTIVELY
THE SYMBOLS MERELY REPRESENT THAT A PRISONER IS FROM
SOUTHERN OR NORTHERN CALIFORNIA, A PERSON WOULD
THINK AT THE VERY LEAST, ONE WOULD HAVE FAIRNESS AND
"PROFESSIONALISM" WOULD MOVE C.D.C. TO GIVE PRISONERS
NOTICE OF THE TATTOOS AND SYMBOLS THAT C.D.C. DEEM
TO BE GANG-RELATED; JUST LIKE LAW-ENFORCEMENT INFORMS
THE PUBLIC IN THEIR COMMUNITIES. THAT WAY PRISONERS
WHO ARE NOT GANG MEMBER OR ASSOCIATES WOULD KNOW
"CONSEQUENCES" IF THEY USED THE SYMBOLS. SEE PEOPLE VS. LOPEZ
1988 CAL APP 4TH 615 630 (ALL ARE ENTITLED TO BE INFORMED
AS TO WHAT THE STATE COMMANDS OR FORBIDS.") ALSO SEE:
RIOS VS. LANE 7TH CIR 1987) 812 F.2D 1032, 1038. ALSO
CCR TITLE 15, SEC 3002 (A) & C.D.C. AGREED IN
THE CASTILLO SETTLEMENT THAT CURRENT ACTIVITY
WILL BE DEFINED AS ANY DOCUMENTED GANG ACTIVITY
WITHIN THE PAST SIX YEARS CONSISTENT WITH CCR
SECTION 3341.5. I, DAVID VELASQUEZ SUBMIT THIS
VALIDATION STATEMENT FOR CONSIDERATION BY I.G.I.
I.S.U./LEIU CLASSIFICATION COMMITTEES AND STAFF
REVIEWER. I REQUEST THAT THIS STATEMENT BE INCLUDED
IN MY VALIDATION PACK "CONCERNING ME. AND A COPY
BE PUT IN MY C-FILE. RESPECTFULLY SUBMITTED D. VELASQUEZ

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Date   :  December 26, 2006

To    :  Inmate VELASQUEZ, D-75915

Subject  :  **SECOND LEVEL APPEAL RESPONSE**
           **LOG NO.: CAL-S-06-02444**

ISSUE: CASE INFO/RECORDS

It is the appellant's position that Calipatria State Prison (CAL) Institutional Gang Investigators (IGI) and Investigative Services Unit (ISU) staff failed to provide sufficient information to validate him as an active associate of the Mexican Mafia prison gang.

The appellant requests that the LEIU decision to validate him as an associate of the Mexican Mafia prison gang be rescinded and that he be returned to the General Population.

INTERVIEWED BY: On December 22, 2006, Correctional Lieutenant G. Stratton interviewed Inmate Velasquez in regards to this appeal. During the interview Inmate Velasquez stated that the information contained within his appeal is accurate and correct. Inmate Velasquez stated that he does not believe that the information used to validate him is sufficient and that CAL staff failed to show that he is "actively" involved with the Mexican Mafia prison gang. Inmate Velasquez stated that the address used as a point of validation belongs to a friend of his that he has been writing to for an extended period of time. Inmate Velasquez stated that at no time has he ever used this address to conduct "gang business" and he would like to see any documentation stating that he has used this address to conduct "gang activity." He does not believe that him having the address is sufficient enough to prove "gang activity" or gang association.

During the interview Inmate Velasquez provided the interviewer with a written rebuttal that is attached to this appeal. Within this written statement Inmate Velasquez provides rebuttals to the "points of validation" used against him.

REGULATIONS: The rule(s) governing this issue are: CCR, Title 15, Section, 3000 Gangs, 3321, Confidential Information, 3023 Gang Activity, 3378 Documentation of Critical Case Information, Departmental Operations Manual (DOM) Section 55070 Gang Management.

Appeal Log # CAL-S-06-02444
Page 2

DISCUSSION: A thorough review of the appropriate CCR, Title 15 sections and DOM section has been conducted and it has been determined that CAL is in compliance with applicable policy.    It has been determined that the  validation of Inmate Velasquez as an associate of the Mexican Mafia prison gang was within current policy.

DECISION: Based upon the above, this appeal is **Denied** at the Second Level of Review.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

J. OCHOA
Chief Deputy Warden (A)
Calipatria State Prison

EXHIBIT J.b.

DATE: 1-09-07

602 PART #H (OF DIRECTOR'S REVIEW)

H. TO DISCOURAGE ~~AN~~ EDUCATION IN ONES HERITAGE BY: ASSOCIATING MY "MEXICAN HERITAGE" WITH GANG ACTIVITY, TO DISCOURAGE EDUCATION IN ONE'S CULTURE AND TO BE PUNISHED FOR HAVEING PRIDE IN WHO YOU ARE AND WHERE YOU COME FROM IS RACISM; "NO MAN NEED NOT DISPAIR OF GAINING CONVERTS TO THE MOST EXTRAVAGANT HYPOTHESIS WHO HAS ART ENOUGH TO REPRESENT IT IN FAVORABLE COLORS"... I/APPELLANT ASK THAT "YOU" LOOK CAREFULLY INTO MY C-FILE. AS YOU WILL SEE APPELLANT HAS NO HISTORY OF GANG ACTIVITY OR ANY KIND OF PROPAGANDA. I JUST WANT TO DO MY TIME AND GO HOME TO MY 3 CHILDREN. AND START FRESH. IM/APPEALLANT AM BEING HELD IN ASU AGAINST MY WILL. FOR I AM NOT A THREAT TO THE SAFETY OF ANY INSTITUTION OF STAFF & INMATES. THIS IS ALL A BIG MISTAKE. AS YOU WILL READ ALL THE ERRORS MADE BY I.G.I./I.S.U. I FAIL TO UNDERSTAND HOW A PERSON CAN BE VALIDATED FOR A ADDRESS I HAVE HAD FOR YEARS IN MY PROPERTY. AND WHAT MAKE'S MATTERS MORE DIFFICULT TO UNDERSTAND IS — I DON'T EVEN KNOW WHICH ADDRESS I.G.I. IS TALKING ABOUT?? I WOULD LIKE TO SEE WHAT ADDRESS I.G.I. SPEAKS OF... AND SHOW ME SOME GANG ACTIVITY WRITTEN TO AND FROM THIS "SAID" ADDRESS. BY DEFINITION SUBSTANTIAL EVIDENCE REQUIRES EVIDENCE AND NOT MERE SPECULATION SEE PEO VS CLUFF 105 CAL RPTR 2d 80 (CAL APP 1ST DIST 2001) AND ALSO SEE CASTILLO V. ALAMEIDA JR. CASE NO. 942874 IN US DIST. FOR NORTHERN DISTRICT OF CAL; FILED IN 1994. I "DAVID VELASQUEZ" SUBMIT THIS VALIDATION STATEMENT FOR CONSIDERATION BY: DIRECTOR LEVEL RESPONCE ~~[illegible]~~ I.S.U./L.E.I.U./CLASSIFICATION COMMITTEES AND STAFF REVIEWER. I REQUEST THAT THIS STATEMENT BE INCLUDED

VELASQUEZ'S 3RD LEVEL RESPONCE PART H. OF 602

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: APR 1 2 2007

In re:   Velasquez, D-75915
Calipatria State Prison
P.O. Box 5002
Calipatria, CA 92233

IAB Case No.: 0608190         Local Log No.: CAL 06-02444

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner P. D. Vera, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that Institution Gang Investigator has failed to demonstrate anything that remotely constitutes as gang activity as defined in California Code of Regulations, Title 15, Section (CCR) 3023. He contends that the mere possession of an address found in his property can not be characterized as fitting the relevant criteria pursuant to CCR 3378 (c)(8)(C)(L). He claims that he never had any written material in his property and believes that there is a mix-up regarding the confidential memorandum dated July 10, 2006. He alleges that his validation is a mistake because his validation package contains another inmates name and CDC number. He also stated that his CDC114D dated July 26, 2006, yet has another inmates name on it. He again asserts that this was a big mistake and more than just one mistake. He requests that the Law Enforcement Investigation Unit (LEIU) decision to validate him as an associate of the Mexican Mafia (EME) be rescinded and he be returned to the general inmate population.

**II   SECOND LEVEL'S DECISION:** The reviewer found that a thorough review of the appropriate CCR and CDC Operations Manual sections has been conducted. The Second Level of Review (SLR) determined that Calipatria State Prison (CAL) is in compliance with applicable policy. The SLR also determined that the validation of the appellant as an associate of the EME was within current policy. Based upon the above, this appeal is denied at the SLR.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A.   FINDINGS:** The institution has adhered to the provisions of CCR 3378 in referring information to the LEIU and when subsequently disclosing to the appellant his status relative to the gang validation process. Review of the validation documentation reflects that sufficient information existed to corroborate gang activity. The appellant's association with the prison gang has been appropriately documented and subsequent housing based upon his association with the EME is deemed appropriate. While the appellant is challenging this information does not meet the criteria pursuant to the Castillo vs. Alameida Jr; case #942847MJJ, he has not presented specific information on his behalf to contradict the validation. Each source document are all separate and distinct from each other. Pursuant to CDCR regulations, the debriefing process is the only method by which the appellant could be released from the Security Housing Unit. All departmental regulations have been followed, and the appellant's allegations that staff have failed to follow established procedures lack merit. In view of the above, there is no good cause to modify the institution's findings. Therefore, no further relief is deemed appropriate at the Director's Level of Review.

   The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B).

   **B.   BASIS FOR THE DECISION:**
   CCR: 3000, 3001, 3023, 3270, 3321, 3375, 3378

VELASQUEZ, D-75915
CASE NO. 0608190
PAGE 2

    **C.  ORDER:**  No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CAL
        Appeals Coordinator, CAL

EXHIBIT "K"

DAVID. VELASQUEZ
C.D.C. R I. D. NO. D-75915
P.O. BOX. 7500
1    CRESCENT CITY CA.
      95531-7500

2    (IN PRO PER)

                        UNITED STATES DISTRICT COURT
3
                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
4

5    MR. DAVID VELASQUEZ
      PETITIONER                        IN RE: SELF-SERVING declaration
6                    Vs.
      IN RE HABEAS CORPUS
7

8         I, DAVID VELASQUEZ, declare under the PENALTY of PER-
9    JURY UNDER the laws of the State of CALIFORNIA that I beLIEVE
10   the underwritten statement is true and correct and that this
11   declaration was executed this 28 day of JULY-2008 at
12   (R.B.S.P.), CALIFORNIA.

13

14        Declarent submits to this Honorable court this SELF-SERVING
15   declaration for the EXPRESS PURPOSE of AffordING this court A
16   SYNOPSIS of the character, demeanor and Mind-set of MYSELF.
17   DECLARENTS SECONDARY INPETUS for the submission of this declar-
18   ation is to disclose AN ON-GOING AND RAPIDLY GROWING discrimin-
19   atory PRACTICE being employed by PRISON staff that I have NOW
20   fallen victim too. Both ISSUES ARE RELATED.

21        Declarent DAVID VELASQUEZ, IS CURRENTLY SERVING A 25 to LIFE
22   sentence for one count of commercial burglary. Declarent REC-
23   EIVED such a lengthy sentence on account he had two PRIOR
24   burglary convictions on his record which under the "Three str-
25   ikes and Your out" LAW constitutes a 25-to-Life sentence.
26   Declarent PREVIOUS PRISON terms were served in level one corr-
27   ectional Institutions. Level one Institutions consist PRIMARILY

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
                                  1 of 3
85 34769

1 of open dormitories with low SECURITY PERIMETER." DECLARENT con-
2 ceeds to the fact that he has had A long standing Addiction to drugs
3 which unequivocally prompted such criminal actions as burglaries for
4 the purpose of supporting his drug Addiction. His bout with drugs has
5 been his ultimate demise.

6     DECLARENT is now coming upon 13 years of incarceration for
7 the commercial burglary which constituted the 25-to-life sentence,
8 However DECLARENT has taken Advantage of the substance Abuse
9 programs Afforded in the level four institutions. Moreover the
10 vocational Amd Educational programs as well. DECLARENT has main-
11 tained An Average to Above Average program without violence
12 during his term And ultimately Reformed, Rehabilitated And shook
13 the Past demons in his life which held him down.

14     DECLARENT as A now Reformed man spends his prison time
15 drawing, writing Poetry And studying <u>Indigeneous Indian History</u>.
16 However, these Progressive steps by the declarent Are now being used
17 Against him in A vague And **overboard** policy being Employed by prison
18 staff. DECLARENT has now found himself caught up in one of the many
19 prisoner Gang sweeps of Hispanic inmates who Alledgedly have ties
20 to the Mexican Mafia prison Gang.

21     In the Event, declarent was designated as An Associate of
22 the Mexica Mafia on Account of <u>Poetry</u> And <u>Indigneous Indian symbols</u>
23 located in his Personal Effects. Throughout declarent 20 years of
24 being involved with the correctional system, he has not once been
25 suspected of or involved in Any Mexican Mafia Activity. The C.D.C.
26 is using Artwork depicting symbols to prove declarent showed
27 Allegiance to the Mexican Mafia. Nevertheless the symbols seized

upon, that is: The Aztec numbers 13 And 14 which are Represented by the symbols: ... And .... respectively. In the urban street culture And Prison setting, these symbols merely mean that a Person is either from southern or Northern California.

Declarent believes that the CDC is interpreting the meaning of these symbols overbroadly. It is a Reknown Practice in the Hispanic culture to use these symbols freely, As they mean different things to different People, bottom line, these symbols have historical And cultural ties to a Race of People And not to Any one Exclusive Gang or faction.

Declarent believes that at the very least that in all fairness And Professionalism the CDC would be Moved to give Prisoners Notice of the tatoos And symbols that (CDC) deems to be Gang Related; Just like law Enforcement Informs the Public in their communities. That way Prisoners who Are not Gang Members or Associates whould Know consequences if they used the symbols.

In conclusion declarent believes he has become a Victim in this overbroad Policy being Employed by the COC. His cultural/Race Pride, talents And Passion for his history has become his demise. Declarent will Now spend An Indeterminate, in a cell that test the limits of what humans can bear for nothing more than some written Poetry And Art depicting symbols.

Declarent, SWEARS BEFORE THIS HONORABLE COURT THAT HE IS NOT A MEMBER NOR ASSOCIATE OF THE MEXICAN MAFIA. A thorough Review of the three (3) Informations Relied upon to validate him will Prove so.

Declarent thanks this Honorable Court for taking the time out to Read this declaration, Moreover declarent Prays that all Attached Exhibits be thoroughly examined

RESPECTFULLY Submitted,

Dated: 7-28-08

DAVID VELASQUEZ / DECLARENT

3 OF 3

Ocelotl ... "cat"

To My Sister Ocelotl (cat)
I wish we weren't apart
from the Xocoyotin (the youngster) of
our family...
I Send this gift from My heart...
My heart Being like the teocalli (Temple)
where My love for you is stored...
oh! how I desire freedom as the
quauhtli (eagle) I would soar...
to those Mountains we once Visited
before... I am the Brother you know and
Cheris... through our letters we held
hands when our Beloved Mother
perished... and I refuse to give in to the
Belief of My arrival to a dead end.
thoughts that frequently circle My Mind of
My children's laughter I imagine that
is the sound of heaven...
A glimpse into My tonalli (soul)
thats what this art work and poem is...
do not forget our family, who we
are... and where we come from...
for as long as you live...

Love Always
your Brother

# "QUETZALCOATL,"

(THE GOD OF CIVILIZATION AND LEARNING) "QUETZAL

(FEATHER) SERPENT," HAD DOZENS OF ASSOCIATIONS.



# AZTEC CIVILIZATION......

THIS IS WHAT I STUDY AND READ ABOUT. IT IS PART OF MY CULTURE,
AND THE CURRENT ARCHAEOLOGICAL DISCOVERIES... GODS AND RELIGION.
PYRAMIDS AND TEMPLES TO...







